Margaret McBride (SBN 294066)
mmcbride@clsepa.org
COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
1861 Bay Road
East Palo Alto, CA 94303
Tel:  (650) 326-6440
Fax:  (866) 688-5204

Linda M. Dardarian (SBN 131001)
ldardarian@dhkl.law
Andrew P. Lee (SBN 245903)
alee@dhkl.law
Katharine Fisher (SBN 305413)
kfisher@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Attorneys for Plaintiff and the Putative Class
(*Additional Counsel for Plaintiff and the
Putative Class listed on following page*)

UNITED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COURTNEY VAN COTT individually and on behalf of others similarly situated,<br><br>　　　Plaintiff,<br><br>vs.<br><br>EQUITY RESIDENTIAL, a real estate investment trust, ERP OPERATING LIMITED PARTNERSHIP, a partnership, EQUITY RESIDENTIAL MANAGEMENT, L.L.C.<br><br>　　　Defendants. | Case No.: 25-cv-02358-JSW<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

931670.20

Craig Nicholas (SBN 178444)
craig@nicholaslaw.org
Alex Tomasevic (SBN 245595)
alex@nicholaslaw.org
NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Floor
San Diego, CA 92101
Tel:  (619) 325-0492
Fax:  (619) 325-0496

Attorneys for Plaintiff and the Putative Class

931670.20

Pls.' Mem. of Points & Auth. in Support of Mot. for Prelim. Approval of Class Action Settlement
Case No. 25-cv-02358-JSW

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 1, 2025 at 9:00 a.m., or as soon thereafter as the Court is available, in the Courtroom of the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Plaintiff Courtney Van Cott will and hereby does move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

a.      Granting preliminary approval of the parties' proposed class action settlement, including the amount of the settlement and the amount and methodology pertaining to distributions of monetary relief to the class;

b.      Certifying the proposed Settlement Class and appointing Plaintiff Van Cott and her counsel as representatives of the Settlement Class;

c.      Approving the parties' proposed form of notice and notice distribution program, as set forth in the Settlement Administration Protocol, appointing Simpluris as settlement administrator, and directing that notice be disseminated pursuant to such program;

d.      Setting a Fairness Hearing and hearing on Plaintiff's Motions for Attorneys' Fees and Costs and Class Representative Service Award for November 21, 2025, or as soon thereafter as the Court is available.

Plaintiff's motion is based on this Notice, the accompanying memorandum of points and authorities, the accompanying declarations of Linda M. Dardarian, Craig Nicholas, Margaret McBride, and Courtney Van Cott, including all exhibits thereto, the argument of counsel, all papers and records on file in this case, and such other matters as the Court may consider.

Dated: June 27, 2025                              Respectfully submitted,

                                                                DARDARIAN HO KAN & LEE

                                                                */s/ Katharine Fisher*
                                                                Katharine Fisher

                                                                Attorneys for Plaintiff and the Putative Class

1

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION ........................................................................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................................. 1

    A.    *Munguia-Brown v. Equity Residential* ........................................................... 1

    B.    *Van Cott v. Equity Residential* ...................................................................... 3

III.  SUMMARY OF PROPOSED SETTLEMENT ........................................................... 5

    A.    The Settlement Class ....................................................................................... 5

    B.    Monetary Relief ............................................................................................... 6

        1.    Refunds of All Late Fees Paid in Excess of Equity's Actual Costs ................... 6

        2.    Account Credits to Reduce Late Fee Charges Not Yet Paid ............................... 6

    C.    Release of Class Claims .................................................................................. 7

    D.    Class Notice and Settlement Administration Procedures ................................ 7

    E.    Class Action Fairness Act ............................................................................... 8

    F.    Unclaimed Funds ............................................................................................ 8

    G.    Class Representative Service Award ............................................................... 9

    H.    Reasonable Attorneys' Fees, Expenses, and Costs ........................................ 9

IV.   ARGUMENT ............................................................................................................... 9

    A.    The Accepted Rule 68 Offer Is an Enforceable Settlement Agreement Subject to Court Approval. ......................................................................................... 10

    B.    The Settlement Class Merits Certification. ..................................................... 10

        1.    The Requirements of Rule 23(a) Are Met. ......................................................... 11

            a.    The Settlement Class Is Sufficiently Numerous. ................................ 11

            b.    There Are Questions of Law and Fact Common to the Class. .............. 11

            c.    Plaintiff's Claims Are Typical of the Class. ........................................ 12

            d.    Plaintiff Is an Adequate Class Representative. ..................................... 12

        2.    Plaintiff's Counsel Are Adequate to Represent the Class and Satisfy the Requirements of Rule 23(g). ............................................................................... 13

931670.20

i

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

    3. The Requirements of Rule 23(b)(3) Are Satisfied. ............................................ 14

  C. The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved. ............. 15

    1. The Settlement Represents an Outstanding Result for the Settlement Class. ...... 16

    2. Plaintiff and Class Counsel Have Adequately Represented the Settlement Class, and Their Experience and Views Support Approval. ............................. 18

    3. The Rule 68 Offer Was Accepted Only After Careful Evaluation by Plaintiff and Her Counsel. ................................................................. 19

    4. The Settlement Treats Class Members Equitably Relative to Each Other. ........ 20

    5. Plaintiff is Entitled to Her Reasonable Attorneys' Fees and Costs and Will Seek Them Separately from Class Member Payments. ................................. 21

    6. The Settlement Is an Especially Excellent Result Compared to Similar Outcomes. .............................................................................. 22

  D. The Proposed Notice Satisfies Due Process and Should Be Approved ......................... 24

  E. The Court Should Approve the Proposed Schedule, Including Setting a Date for the Fairness Hearing ................................................................. 25

V. CONCLUSION .............................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Abdullah v. U.S. Sec. Assoc., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ................................................................. 11

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 14, 15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ................................................................. 12

*In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*,
    654 F.3d 935 (9th Cir. 2011) ................................................................. *passim*

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................. 24

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................................................. 16

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ................................................................. 20

*Elder v. Hilton Worldwide Holdings, Inc.*,
    No. 4:16-cv-00278-JST, 2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) ................... 15

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) ................................................................. 10

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
    640 F.3d 1034 (9th Cir. 2011) ................................................................. 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. *passim*

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2009) ................................................................. 18

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ................................................................. 9, 14, 15, 21

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
    909 F.3d 272 (9th Cir. 2018) ................................................................. 21

*Kubiak v. County of Ravalli*,
    32 F.4th 1182 (9th Cir. 2022) ................................................................. 10

iii

931670.20

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

*Low v. Trump Univ., LLC,*
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ....................................................... 17

*McCumber, et al. v. Invitation Homes, Inc.,*
    No. 3:21-cv-02194-B (N.D. Tex. July 30, 2024) ................................................ 23, 24

*Miller v. City of Portland,*
    868 F.3d 846 (9th Cir. 2017) ....................................................................... 10

*Mullane v. Cen. Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950). ................................................................................... 24

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2017 WL 4838822 (N.D. Cal. Oct. 23, 2017) ...................... 2

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-THS, 2018 WL 11391188 (N.D. Cal. Aug. 6, 2018) ..................... 2

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2019 WL 3779523 (N.D. Cal. Aug. 12, 2019) ..................... 2

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2020 WL 3057502 (N.D. Cal. June 8, 2020)....................... 2

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2020 WL 6130887 (N.D. Cal. Oct. 19, 2020) ..................... 2

*Munguia-Brown v. Equity Residential,*
    337 F.R.D. 509 (N.D. Cal. 2021) .................................................................... 2

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2023 WL 1868875 (N.D. Cal. Jan. 24, 2023)......................... 2, 11, 12

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2024 WL 1530571 (N.D. Cal. Apr. 8, 2024)........................... 1, 2, 12

*Munguia-Brown v. Equity Residential,*
    No. 16-cv-01225-JSW-TSH, 2021 4951460 (N.D. Cal. Oct. 25, 2024) ........................... 2

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)..................................................................... 18

*O'Connor v. Uber Techs., Inc.,*
    201 F. Supp. 3d 1110 (N.D. Cal. 2016)............................................................. 9

*Officers for Justice v. Civ. Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ....................................................................... 25

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 15, 19

iv

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ................................................................. 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................... 16, 20

*Syverson v. Int'l Bus. Machines Corp.*,
  472 F.3d 1072 (9th Cir. 2007) ................................................................. 11

*Taylor v. W. Marine Prods., Inc.*,
  No. 3:13-cv-04916-WHA, 2014 WL 4683926 (N.D. Cal. Sept. 19, 2014) ................................. 18

*Trident Ctr. v. Conn. Gen. Life Ins. Co.*,
  847 F.2d 564 (9th Cir. 1988) ................................................................. 10

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................. 14

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) ................................................................. 17

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................... 7, 11, 12

*Zeff v. Greystar Cal., Inc.*,
  No. 3:20-cv-07122-EMC (N.D. Cal. Jan. 1, 2025) ..................................... 22, 23, 24

**State Cases**

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
  69 Cal. 2d 33 (1968) ................................................................. 10

*Seltzer v. Palmer, et al.*,
  No. 18STCV07828 (L.A. Cnty. Super. Ct. Jan. 5, 2024) ..................................... 23, 24

**Federal Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ................................................................. 4, 8

**State Statutes**

California Business and Professions Code § 17200 *et seq.* ................................................................. 2

California Civil Code
  § 1021.5 ................................................................. 21
  § 1671 ................................................................. 11
  § 1671(d) ................................................................. *passim*

v

931670.20

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

**Rules**

Fed. R. Civ. P.

23 ............................................................................................................... 15, 23

23(a) ................................................................................................ 9, 10, 11, 12

23(b) ........................................................................................................ 9, 10

23(b)(3) .............................................................................................. 10, 14, 15

23(c)(2)(B) ..................................................................................................... 24

23(c)(3) ........................................................................................................ 24

23(e) ..................................................................................................... *passim*

23(g) ....................................................................................................... 13, 15

23(h) ............................................................................................................. 9

23(h)(1) ........................................................................................................ 24

68 ......................................................................................................... *passim*

**Other Authorities**

Karen L. Stevenson, J. & James E. Fitzgerald, The Rutter Group Practice Guide, Federal
Procedure Before Trial, California and Ninth Circuit Edition Ch. 1-B(e), § 1:191
(Apr. 2025 update) ......................................................................................... 10

Manual for Complex Litigation (Fourth) §§ 21.632-634 (2004) ..................................... 9, 16

7A Wright & Miller, Federal Practice & Procedure §§ 1777-78 (2d ed. 1986) ...................... 14

# I.    INTRODUCTION

Plaintiff Courtney Van Cott seeks preliminary approval of a proposed class action settlement that provides Settlement Class Members the full value of the late-fee reimbursements sought in this lawsuit. Balanced against the cost, delay, and risks of further litigation, the relief provided by the settlement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e) and satisfies all of the criteria for preliminary settlement approval.  Plaintiff respectfully requests that the Court: (i) preliminarily approve the settlement; (ii) certify the proposed Settlement Class and appoint Plaintiff Van Cott as Settlement Class Representative and Plaintiff's attorneys as Class Counsel; (iii) approve the proposed form of the class notice and the notice distribution plan; and (iv) set a fairness hearing.

# II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and proposed Settlement Class representative Courtney Van Cott is a former tenant of Equity Residential in California who was charged and paid a late fee based on Equity's former "Standard Late Fee" in September 2023.  *See* Compl., ECF No. 1-1, ¶ 3.  Under the Standard Late Fee, in place from June 2008 through April 2024, Equity charged its California tenants a fee equal to 5% of their monthly rent, or a minimum of $50, for the late payment of rent.  *See id.* ¶ 1.  On April 8, 2024 after trial in the longstanding related case called *Munguia-Brown, et al. v. Equity Residential, et al.*, Case No. 4:16-cv-01225-JSW-TSH, this Court held that Equity's Standard Late Fee is a liquidated damages penalty that is null and void under California Civil Code section 1671(d) because it is excessive and bears no relation to any actual damages incurred by Defendants when rent is paid late.  *See id.* ¶ 2 & Ex. A (*Munguia-Brown* Court's Apr. 8, 2024 Findings of Fact and Conclusions of Law, ECF No. 546 at ¶ 61)), available at 2024 WL 1530571 (N.D. Cal. Apr. 8, 2024).  Ms. Van Cott is one of 21,800 proposed Settlement Class Members here who were charged Equity's Standard Late Fee, but who are not entitled to monetary relief in the *Munguia-Brown* case because they were first charged the Standard Late Fee after the class definition had closed in that case.  *See* Compl. ¶ 3; Decl. of Linda M. Dardarian in Supp. of Pl's. Mot. for Preliminary Approval of Class Action Settlement ("Dardarian Decl."), filed herewith, ¶ 59.

## A.    *Munguia-Brown v. Equity Residential*

The *Munguia-Brown* action was filed on September 3, 2014 and removed to this Court on March 11, 2016.  *See Munguia-Brown*, ECF No. 1 & 1-1.  Plaintiff's Counsel here is Class Counsel in that case.

Based on extensive discovery, including multiple sets of written discovery, thousands of documents, multiple corporate witness and named-plaintiff depositions, and discovery rulings from the Court, on October 23, 2017, the Court granted the plaintiffs' motion to certify the Standard Late Fee Class, which encompassed Equity's California tenants who had been charged the Standard Late Fee on or before October 23, 2017.[1]  *See Munguia-Brown*, ECF No. 91, 2017 WL 4838822 (N.D. Cal. Oct. 23, 2017).  The Standard Late Fee class was later expanded to encompass monetary relief for all California tenants who had been charged the Standard Late Fee for the first time between September 3, 2010 through October 28, 2022, based on the then-scheduled trial date, as well as injunctive relief for all current and future tenants. *See Munguia-Brown*, ECF No. 315, 2021 WL 4951460 (N.D. Cal. Oct. 25, 2024).  Following key rulings that set the stage for litigating whether Equity had conducted the required reasonable endeavor to set a late fee based on a fair approximation of its average costs of late rent, as well as Equity's affirmative defenses – namely, the scope of actual damages from collecting late rent that Equity could claim to offset restitution owed to tenants and whether the common law voluntary payment doctrine foreclosed tenants' recovery;[2] the Court held an eight-day bench trial from June 8 to 21, 2023.  *See generally* ECF No. 1-1, Ex. A (*Munguia-Brown*, ECF No. 546).

On April 8, 2024, the Court issued the *Munguia-Brown* Findings of Fact and Conclusions of Law holding that Equity's Standard Late Fee violated California Civil Code section 1671(d) and the Unfair Competition Law, California Business and Professions Code section 17200 *et seq*., and concluding that the late fees collected by Equity must be returned to the classes, reduced only by the actual damages caused by the tenants' late payment of rent.  *See* ECF No. 546 at 34 ¶¶ 61-62 (2024 WL 1530571).  The Court

---

[1] The Court later denied Equity's motion to reconsider its class certification ruling, and the Ninth Circuit denied Equity's petition for permission to appeal the court's ruling.  *See* ECF Nos. 103, 105 & 107.

[2] *See Munguia-Brown,* ECF Nos. 142 (2019 WL 3779523 (N.D. Cal. Aug. 12, 2019)) (Order Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment); 315 (2021 WL 4951460 (N.D. Cal. Oct. 25, 2024)) (Order Denying Equity's Motion for Summary Judgment Regarding the Voluntary Payment Doctrine); 171 (2020 WL 3057502 (N.D. Cal. June 8, 2020)), 178 (2020 WL 6130887 (N. D. Cal. Oct. 19, 2020)) & 273 (337 F.R.D. 509 (N.D. Cal. 2021)) (rulings by Magistrate Judge Hixson finding Equity had waived attorney-client and work-product privilege and requiring Equity to produce internal communications regarding its decision to set the Standard Late Fee).  Other key rulings obtained by the *Munguia-Brown* plaintiffs include the Court denying Equity's Motion for Leave to File Counterclaims against class members for damages from unrelated breaches, ECF No. 116 (2018 WL 11391188 (N.D. Cal. Aug. 6, 2018)); granting Plaintiffs' Motion to Dismiss Equity's claims for set-off related to extraneous class member debts, ECF No. 315 (2021 WL 4951460); and denying Equity's Motion to Decertify the Class, ECF No. 422 (2023 WL 1868875 (N.D. Cal. Jan. 24, 2023)).

1  requested further briefing regarding the final restitution amount, based on plaintiffs' experts' data-based

2  calculations of late fees collected and Equity's offset for its administrative and interest costs of collecting

3  late rent, and on proposed injunctive relief. *See* ECF No. 547. As part of this briefing, plaintiffs' expert

4  economist and statistician Andrew Schwarz applied his Court-approved multiple regression analysis to

5  Equity's cost data from May 1, 2022 through April 29, 2024 and determined that Equity's average cost of

6  collecting late rent for that period totaled $31.98 per late fee. *See Munguia-Brown*, ECF No. 557-5 at 11

7  ¶ 18. Equity disputes plaintiffs' experts' methodology and proposed injunctive relief.

8         The parties have completed post-trial briefing in *Munguia-Brown* and await the Court's final

9  rulings regarding restitution and injunctive relief. *See Munguia-Brown*, ECF No. 576 (Mar. 28, 2025

10  Joint Status Update). Equity has indicated it intends to appeal the Court's rulings in *Munguia-Brown*.

11  **B.   *Van Cott v. Equity Residential***

12        Plaintiff Courtney Van Cott lived at an Equity residential property in Oak Park, California from

13  February 2022 until November 5, 2024, and her lease agreements with Equity each contained the

14  Standard Late Fee provision. *See* Decl. of Pl. Courtney Van Cott in Supp. of Pl's. Mot. for Preliminary

15  Approval of Class Action Settlement ("Van Cott Decl."), submitted herewith, ¶ 2 & Exs. A-B; Compl.

16  ¶ 18. On September 5, 2023, Equity assessed a $143.25 Standard Late Fee (*i.e.,* 5% of her monthly rent)

17  against Plaintiff Van Cott after she mistakenly did not pay her monthly rent within the grace period falling

18  over a holiday weekend. Van Cott Decl. ¶ 3 & Ex. C. Despite Plaintiff Van Cott's request, Equity

19  refused to waive the Standard Late Fee based on her mistake, and so on the second day after the grace

20  period, Ms. Van Cott paid her full balance, including the late fee. *See id.* Because Ms. Van Cott's only

21  late fee had been charged after the *Munguia-Brown* Standard Late Fee Monetary Relief Class definition

22  closed on October 28, 2022, Ms. Van Cott is not a Standard Late Fee Monetary Relief Class Member

23  entitled to restitution in *Munguia-Brown*. *See Munguia-Brown*, ECF Nos. 315, 322.

24        Accordingly, Ms. Van Cott filed this action on January 16, 2025, in Alameda Superior Court,

25  seeking to represent a class defined as:

26        All Equity Residential tenants in the State of California who, from October 29, 2022
        through April 30, 2024, were first charged one or more late fee(s) under Equity
27      Residential's standard late fee provision: 5% of the outstanding balance owed (capped at
        5% of the total amount of monthly recurring charges or $50, whichever is greater.

28

931670.20

*See* Compl. ¶ 21.  The Complaint seeks only monetary relief, because any injunctive relief to which class members might be entitled will be addressed in the *Munguia-Brown* action, given that Class Members here are simultaneously members of the Standard Late Fee Injunctive Relief Class in *Munguia-Brown*. *See Munguia-Brown*, ECF Nos. 315 & 322.  On March 7, 2025, Defendants removed this action to the United States District Court for the Northern District of California under the Class Action Fairness Act ("CAFA"), ECF No. 1, and on March 11, 2025 the case was reassigned to this Court after being related to the *Munguia-Brown* action.  *See Munguia-Brown*, ECF No. 575.

On April 25, 2025, Equity served on Plaintiff a Classwide Offer of Judgment Pursuant to Rule 68 of the Federal Rules of Civil Procedure (the "Rule 68 Offer"), in which Equity offered to allow Plaintiff and the putative class to take judgment against it in the total amount of $2,934,620 in satisfaction of all claims asserted in the Complaint, in addition to separately covering the costs of settlement administration and permitting Plaintiff to request the Court to reimburse her reasonable attorneys' fees and expenses and provide a class representative service award.  *See* Dardarian Decl. Ex. A ¶¶ 1-4; *see also* ECF No. 11 & Ex. A (Notice of Accepted Rule 68 Offer).  Under the Rule 68 Offer, the putative Settlement Class – defined to match the class in Plaintiff's Complaint – would be entitled to either restitution of all Standard Late Fees they paid to Equity from October 29, 2022 through April 30, 2024, in excess of the $31.98 per late fee that *Munguia-Brown* plaintiff-expert Schwarz had calculated to be Equity's actual average cost per late fee of collecting late rent over the *Van Cott* class period, or credits to their tenant accounts based on the same formula for those class members who had been charged but had not paid the Standard Late Fee.[3]  *See id.* ¶¶ 2-3; *see also* Settlement Admin. Protocol, Dardarian Decl. Ex. D, ¶ 3(b) & n.1.

Plaintiff's Counsel met and conferred with Equity's Counsel regarding the Rule 68 Offer and learned that the offer was based on Equity's actual tenant ledger data reflecting class members' actual Standard Late Fee charges and payments with an amount added to account for a potential five percent margin of error in the calculations, which Plaintiff's Counsel believes provides full late fee restitution to

---

[3] The account credits would apply to Standard Late Fee charges that remained pending and unpaid as of April 3, 2025.  *See* Rule 68 Offer ¶ 3.

Plaintiff and the Class.[4]  *See* Dardarian Decl. ¶¶ 22-25.  Plaintiff's Counsel also clarified their understanding that the Rule 68 Offer would not release claims beyond those for monetary relief asserted in the *Van Cott* Complaint.  *See* Dardarian Decl. ¶ 24 & Ex. B (May 1, 2025 letter).  Based on Plaintiff's Counsel's evaluation and understanding, and against the backdrop of their extensive experience litigating these same issues against Equity in *Munguia-Brown*, Plaintiff's Counsel determined the class would be unlikely to recover more than the amount offered and that securing such amounts through summary judgment or trial would require significant time and resources.  *See id.* ¶ 25.  Accordingly, on May 9, 2025, Plaintiff accepted the Rule 68 Offer based on her understanding of its terms and subject to the Court's approval of the settlement.  *See* ECF No. 11; Dardarian Decl. ¶ 25 & Ex. C (May 9, 2025 Email).

Following Plaintiff's acceptance, the Parties conferred and negotiated the Settlement Administration Protocol addressing ancillary terms that were not covered by the Rule 68 Offer.  *See* Dardarian Decl. ¶ 26 & Ex. D.  Together, the Rule 68 Offer and the Settlement Administration Protocol set forth the Parties' entire settlement agreement.  *See* Fed. R. Civ. P. 23(e)(3).

### III.    SUMMARY OF PROPOSED SETTLEMENT

The Settlement, *i.e.,* the Accepted Rule 68 Offer and the Settlement Administration Protocol, Exhibits A and D to the Dardarian Declaration, includes the following terms:

**A.    The Settlement Class**

The Settlement Class is defined to match the definition set forth in Plaintiff's Complaint:

> All Equity Residential tenants in the State of California who, from October 29, 2022 through April 30, 2024, were first charged one or more late fee(s) under Equity Residential's former "Standard Late Fee" provision: 5% of the outstanding balance owed (capped at 5% of the total amount of monthly recurring charges) or $50, whichever is greater.

*Compare* Rule 68 Offer ¶ 2; *with* Compl. ¶ 21; *see generally* N.D. Cal. Procedural Guidance for Class Action Settlements ("Settlement Guidance") ¶ 1(a).  The Settlement Class encompasses all of Equity's California tenants who were charged the Standard Late Fee that the *Munguia-Brown* court has declared

---

[4] The offer also closely approximated Plaintiff's estimate of the net restitution to which the class might be entitled based on the total late fees that had been charged to them, as projected from extensive tenant payment data Class Counsel obtained in the *Munguia-Brown* case.  *See* Dardarian Decl. ¶ 23.

931670.20

1  null and void, but who are not entitled to recover monetary relief in that action.  Because the Complaint

2  only addresses monetary relief, the Settlement provides Class Members only monetary relief as well.

3  **B.    Monetary Relief**

4        **1.    Refunds of All Late Fees Paid in Excess of Equity's Actual Costs**

5        The Settlement provides $2,272,224 in restitution to Settlement Class Members who were charged

6  and paid the Standard Late Fee between October 29, 2022 and April 30, 2024.  *See* Rule 68 Offer ¶ 3.

7  The Settlement Administrator will automatically distribute these funds to participating Settlement Class

8  Members without any need to submit a claim form or supporting documentation.  The amount of

9  restitution to be provided to each Settlement Class Member shall be based on the Standard Late Fees paid

10  by that Class Member, according to Equity's tenant-ledger data, minus $31.98 per late fee charge – which

11  is Equity's actual average cost-per-late-fee of collecting late rent during the class period according to

12  plaintiffs' expert in *Munguia-Brown*.  *See id.*; Settlement Admin. Protocol ¶ 3(b); *see also Munguia-*

13  *Brown* ECF No. 575-5 ¶ 18 (Schwarz Post-Trial Declaration).  The Administrator will send checks to all

14  Settlement Class Members who were the primary tenant of their unit, unless they opt to receive electronic

15  payments.  *See* Settlement Admin. Protocol ¶ 6(b).  Class Members will have 180 days to cash their

16  checks before the funds are deposited with the state of California's Unclaimed Property program (and

17  remain available for claiming at any time).  *See id.* ¶ 6(e).

18        **2.    Account Credits to Reduce Late Fee Charges Not Yet Paid**

19        The Settlement further provides $662,396 in account credits to reduce Standard Late Fees that

20  class members were charged but had not paid as of April 3, 2025, and which remain as debts on their

21  tenant ledgers.  *See* Rule 68 Offer ¶ 3; Settlement Admin. Protocol ¶ 3(b) & n.1.  These credits also

22  represent the amount charged minus $31.98 per late fee – again based on Equity's actual average cost per

23  late fee, according to plaintiffs' expert in *Munguia-Brown*.  Equity will have 75 days from the date of

24  Final Approval to apply the account credits to tenant accounts.  Settlement Admin. Protocol ¶ 6(f).  If a

25  Settlement Class Member who would be entitled to an account credit has moved from their Equity

26  apartment and no longer has a current tenant account, Equity will notify its applicable collection agency to

27  apply the credit to the Class Member's outstanding debt, or if the Class Member paid their debt upon

28  moveout, Equity will notify the Administrator to issue the Class Member a check.  *Id.*

931670.20

**C.**     **Release of Class Claims**

In exchange for the monetary relief proposed in the Settlement, Plaintiff and Settlement Class Members agree to "completely release and discharge Equity—including any individual, entity, or attorney affiliated in any way with Equity—from any and all liability arising from the acts, omissions, events, or occurrences alleged or litigated in this action, including but not limited to any and all claims that Plaintiff and the Class have asserted or could have asserted against Equity based on the allegations in the operative pleadings in this action." Rule 68 Offer ¶ 9; *see also* Dardarian Decl. Ex. B. The claims to be released are the same as the claims in the operative complaint. *See* Settlement Guidance ¶ 1(b). The release does not extend to the injunctive relief currently sought on behalf of Class Members in *Munguia-Brown* as class members cannot opt out of that relief. *See generally* Rule 68 Offer ¶¶ 7, 9, 10; Dardarian Decl. Ex. B; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

**D.**     **Class Notice and Settlement Administration Procedures**

Under the Settlement, Equity will separately pay the costs of settlement administration. Rule 68 Offer ¶ 4. Equity has retained Simpluris to administer the settlement after soliciting and comparing two competing bids from Simpluris and Angeion. *See* Dardarian Decl. ¶ 37; *see generally* Settlement Guidance ¶ 2(a). Plaintiff's Counsel has worked with Simpluris in one other case in the last two years. *See* Dardarian Decl. ¶ 37 (1 time); Decl. of Craig Nicholas in Supp. of Pl.'s Mot for Prelim. Approval ("Nicholas Decl.") ¶ 18 (0 times); Decl. of Margaret McBride in Supp. of Pl.'s Mot. for Prelim. Approval ("McBride Decl.") ¶ 8 (0 times); *see generally* Settlement Guidance ¶ 2(a). Based on information provided by the proposed Administrator, Equity estimates administration costs to be approximately $50,000. Settlement Admin. Protocol ¶ 1(j).

Submitted herewith as Exhibit D to the Dardarian Declaration is the Parties' negotiated Settlement Administration Protocol, which reviews the notice plan and in turn attaches the proposed long-form, email, and post-card notices. In sum, within twenty-one days of preliminary approval,[5] Simpluris will disseminate e-mail notice (Settlement Admin. Protocol Ex. 2) to Class Members whose e-mail addresses

---

[5] Equity will provide the Class List, including Class Member contact information and the amounts they will receive as payments or account credits under the Settlement, to Simpluris by the date seven (7) days before the Preliminary Approval Hearing in order to give the Administrator ample time to prepare to disseminate notice as soon as the Court orders. *See* Settlement Admin. Protocol ¶ 3(a).

931670.20

1  Equity has available in its tenant data, updated through an industry-standard email change of address

2  database.  *Id.* ¶ 3.  The e-mail notice will provide a summary of the Settlement, the amount of the Class

3  Member's award, and the process for disputing awards, as well as a link to the long-form notice and the

4  Settlement website to be maintained by the Settlement Administrator.[6]  *Id.* Ex. 2.  For Class Members

5  who have no e-mail address,[7] the Settlement Administrator will send via U.S. Mail the postcard notice

6  (Settlement Admin. Protocol Ex. 3) to the Class Members' mailing address in Equity's tenant records,

7  after any updating based on the National Change of Address database.  *Id.* ¶ 3(g).  Class Members will

8  have sixty days from the date notice is disseminated (to include time for class members to challenge their

9  award amounts) to opt-out of the settlement, by contacting the administrator via mail or electronically

10  through the website, or to submit an objection to the Court, whether in person, via mail, or electronically.

11  *See id.* ¶¶ 4-5; *see generally* Settlement Guidance ¶¶ 4-5.  Plaintiff will file her motions for attorneys' fees

12  and costs and a class representative service award so that Class Members have at least thirty-five days

13  within that period to object or opt out.  *See* Settlement Guidance ¶ 9.

14  **E.   Class Action Fairness Act**

15       CAFA Notice is required here and will be given by the Settlement Administrator within ten days

16  of Plaintiff's filing of the instant motion.  *See* Admin. Protocol ¶ 1(c) (citing 28 U.S.C. § 1715);

17  Settlement Guidance ¶ 10.  No other substantive requirements of CAFA are relevant here.

18  **F.   Unclaimed Funds**

19       Given that reversionary settlements are disfavored within the Ninth Circuit, *see* Settlement

20  Guidance ¶ 1(g), and because this settlement represents restitution of late fees collected from Class

21  Members, any class member award amounts remaining after uncashed checks have gone stale will be

22  transferred to the state of California's Unclaimed Property program, which will permit Class Members to

23  claim those funds at any time.  *See* Settlement Admin. Protocol ¶¶ 1(c), 6(e).

24       The $2,934,620 total class relief amount ($2,272,224 in restitution and $662,396 in account

25  credits) includes a buffer of 5% in addition to Equity's calculations of the actual amounts of restitution

---

[6] The Settlement-specific website will also contain key documents for Class Members to review, including the Complaint, Rule 68 Offer, Settlement Administration Protocol, and Preliminary Approval briefing and Order.  *See* Settlement Admin. Protocol ¶ 2(c).

[7] This will include e-mail addresses ending in Equity domains.  *See* Settlement Admin. Protocol ¶ 3(g).

1  and credits that are owed to Settlement Class Members, in order to account for errors and omissions in

2  those calculations.  Settlement Admin. Protocol ¶ 3(b) & n.1; Dardarian Decl. ¶ 46.  The 5% buffer will

3  pay for errors and omissions resolved in the Class Members' favor.  *See id.*  If any of the 5% buffer

4  remains after all Class Member disputes have been resolved – *i.e.*, an amount that is not actually owed to

5  Class Members based on the late fees they have been charged or have paid – that amount will revert to

6  Equity.  But, no funds that have been determined to be owed to Class Members will revert to Equity.

7  **G.    Class Representative Service Award**

8          Subject to Court approval upon Plaintiff's separate motion, Equity will separately pay Plaintiff

9  Van Cott $5,000 in recognition of the time and effort she expended on behalf of the Settlement Class in

10  bringing this action and seeing it through resolution.  *See* Rule 68 Offer ¶ 4.

11  **H.    Reasonable Attorneys' Fees, Expenses, and Costs**

12          Plaintiff will move separately for an award of reasonable attorneys' fees, expenses, and costs in an

13  amount not to exceed $699,000, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure.  *See* Rule

14  68 Offer ¶ 4; Dardarian Decl. ¶¶ 48, 73-78; *see also* Settlement Guidance ¶ 6.  Plaintiff will seek

15  reasonable attorneys' fees pursuant to the "lodestar" method.  *See, e.g., In re Hyundai and Kia Fuel Econ.*

16  *Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*, 654

17  F.3d 935, 941 (9th Cir. 2011).  Of that total, Plaintiff will seek reimbursement of costs in an amount not to

18  exceed $20,000, which includes all costs incurred to date as well as additional costs that will be incurred

19  between now and the date of final approval.  Rule 68 Offer ¶ 4.  Plaintiff will file this and the service

20  award motion so that class members have at least thirty-five days after the motions are filed to opt out or

21  object to the settlement and Plaintiff's motions.  *See* Settlement Guidance ¶ 9.

22                          **IV.    ARGUMENT**

23          Settlement approval involves "a two-step process" in which the Court "first determines whether

24  class action settlement deserves preliminary approval and then, after notice is given to class members,

25  whether final approval is warranted."  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121-2 (N.D.

26  Cal. 2016); *see also* Manual for Complex Litigation (Fourth) §§ 21.632-634 (2004) ("Manual").

27  Preliminary approval requires two elements: first, the court must determine that the settlement class meets

28  the requirements for class certification if it has not yet been certified, Fed. R. Civ. P. 23(a)-(b), and

second, the court must determine that the settlement is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998).

**A.**     **The Accepted Rule 68 Offer Is an Enforceable Settlement Agreement Subject to Court Approval.**

A Rule 68 offer of judgment "is essentially a settlement offer," which plaintiff may accept any time within fourteen days of receiving it. *Kubiak v. County of Ravalli*, 32 F.4th 1182, 1185 (9th Cir. 2022). "Once accepted, an offer of judgment becomes a settlement agreement." *Miller v. City of Portland*, 868 F.3d 846, 850 (9th Cir. 2017) (citing *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995)). The Ninth Circuit has "repeatedly emphasized that Rule 68 offers of judgment are 'analyzed in the same manner as any contract,'" so "'any ambiguities are construed against the drafter.'" *Kubiak*, 32 F.4th at 1187 (quoting *Miller*, 868 F.3d at 851); *see generally*, *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 568-69 (9th Cir. 1988) (Under California contract law, extrinsic evidence is admissible to interpret, alter, or supplement even the unambiguous terms of a written contract because "contractual obligations flow not from the words of the contract, but from the intention of the parties.") (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968)).[8]

**B.**     **The Settlement Class Merits Certification.**

The Settlement Agreement makes no changes to the class definition proposed in Plaintiff's Complaint. *See* Settlement Guidance ¶ 1(a). In accordance with Federal Rule of Civil Procedure 23(a), class certification is proper if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the proposed class must be certifiable under one of the three sub-provisions of Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3), pursuant to which class certification is proper if (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action

---

[8] Federal courts in diversity cases apply state rules governing interpretation of contracts as such rules are deemed substantive for purposes of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *See* Karen L. Stevenson, J. & James E. Fitzgerald, The Rutter Group Practice Guide, Federal Procedure Before Trial, California and Ninth Circuit Edition Ch. 1-B(e), § 1:191 (Apr. 2025 update) (collecting cases).

931670.20

1  is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ.

2  P. 23(b)(3).

3     **1.     The Requirements of Rule 23(a) Are Met.**

4        **a.     The Settlement Class Is Sufficiently Numerous.**

5        Numerosity demands that a class be large enough that joinder of all members would be

6  impracticable.  Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019.  Here, there are approximately 21,800

7  Settlement Class Members, making joinder highly impracticable.  *See* Dardarian Decl. ¶ 59.  As such, the

8  numerosity requirement of Rule 23(a) is satisfied.

9        **b.     There Are Questions of Law and Fact Common to the Class.**

10       The commonality prerequisite concerns the existence of questions of law and/or fact common to

11  the class and is "construed permissively."  *Hanlon*, 150 F.3d at 1019.  To satisfy commonality, at least

12  one common contention must be capable of classwide resolution.  *Wal-Mart*, 564 U.S. at 350.  "[T]he key

13  inquiry is not whether the plaintiffs have raised common questions, . . . but rather, whether class treatment

14  will 'generate common *answers* apt to drive the resolution of the litigation.'"  *Abdullah v. U.S. Sec.*

15  *Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 351).

16       Plaintiff's claims, as set forth in the Complaint, raise several common issues of law and fact,

17  including whether the Standard Late Fee in Class Members' lease agreements constitutes unlawful

18  liquidated damages; whether Equity selected the Standard Late Fee amount without conducting the

19  required reasonable endeavor to estimate whether it would represent fair compensation for the loss

20  sustained; whether Equity charged and collected late fees that do not represent a fair compensation for the

21  loss sustained; and whether Equity therefore engaged in unlawful and unfair business practices that violate

22  California Civil Code section 1671 and the UCL.  *See* Compl. ¶ 24.  As in *Munguia-Brown*, Equity's

23  liability and entitlement to offset under Section 1671(d) will turn on common questions, and upon entry of

24  judgment in *Munguia-Brown*, class members here would have been jointly entitled to seek offensive

25  collateral estoppel against Equity.  *See generally Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072,

26  1078 (9th Cir. 2007).  Likewise, Equity's affirmative defenses, including the appropriate offset and

27  applicability of the voluntary payment doctrine, would present common issues.  *See, e.g., Munguia-*

28  *Brown*, ECF No. 422 at 3 (2023 WL 1868875 (N.D. Cal. Jan. 24, 2023)) (in denying decertification,

11

931670.20  Pls.' Mem. of Points & Auth. in Support of Mot. for Prelim. Approval of Class Action Settlement
Case No. 25-cv-02358-JSW

1  finding for third time that "Defendants' uniform late fee gives rise to predominant common questions of

2  liability," that "class member recoveries do not require individualized inquiries and may be determined

3  based on common evidence," and that the voluntary payment defense "must be premised on a fully

4  informed consumer understanding the validity of the payment"); ECF No. 546 ¶¶ 29-34 ¶¶ 30-59 (2024

5  WL 1530571) (describing extensive common legal and factual issues predominating offset analysis).

6  Finally, the amount of restitution Equity owes to class members – within the context of settlement and

7  continued litigation – will depend on a uniform analysis of classwide data.  *See, e.g.*, *Munguia-Brown*,

8  ECF No. 422 at 3 (2023 WL 1868875) (noting common evidence, which is the same here, including

9  "documentation and records of the late payments and fees assessment as well as actual costs incurred for

10  late payment of rent and actual costs it incurred as a result of the late payments").

11      These common questions of law and fact rely on common contentions that are not affected by the

12  circumstances of any individual class member.  Such questions are therefore capable of generating

13  common answers and thus are appropriate for class-wide resolution.  *Wal-Mart*, 564 U.S. at 351.

14              c.    **Plaintiff's Claims Are Typical of the Class.**

15      The typicality prerequisite of Rule 23(a)(3) is met if Plaintiff's claims "are reasonably co-

16  extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d

17  at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (typical claim arises from same

18  course of events and relies on similar legal arguments).  Like all members of the Settlement Class,

19  Plaintiff was a California tenant subject to Equity's Standard Late Fee in her residential lease agreement

20  and was first charged the Standard Late Fee during the time period covered by the class definition.  *See*

21  Van Cott Decl. ¶¶ 2-4.  Plaintiff alleges the same harm, relies on the same legal theories, and seeks the

22  same monetary relief as all members of the Settlement Class.

23              d.    **Plaintiff Is an Adequate Class Representative.**

24      The adequacy prerequisite of Rule 23(a) requires that the "representative parties will fairly and

25  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Proposed class representatives may

26  not have conflicts of interest with the class and must vigorously prosecute the action on behalf of the

27  class.  *Hanlon*, 150 F.3d at 1020.  Here, the interests of the Plaintiff and putative class members are

28  aligned, as the harm she alleges and the monetary relief she seeks are generalizable to the entire

931670.20

Settlement Class. Plaintiff has fully represented the interests of her fellow Class Members, and she is not aware of any conflicts of interest that would affect her ability to fairly and adequately protect the interests of the Settlement Class. *See* Van Cott Decl. ¶¶ 5-9. Therefore, she is an adequate representative.

### 2.    Plaintiff's Counsel Are Adequate to Represent the Class and Satisfy the Requirements of Rule 23(g).

Pursuant to Rule 23(g)(1)(A), the court considers four factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Here, each factor weighs in favor of appointing Dardarian Ho Kan & Lee, Nicholas & Tomasevic, and Community Legal Services in East as class counsel, as the Court did in *Munguia-Brown*. *See Munguia-Brown*, ECF No. 91 at 9.

Plaintiff's Counsel are uniquely qualified to represent the Settlement Class here, given that they have been vigorously litigating the same issues against the same defendant for the past eleven years in the *Munguia-Brown* action, including having successfully represented hundreds of thousands of Equity tenants at trial. In doing so, Plaintiff's Counsel have thoroughly investigated the potential claims in this action. Additionally, they have significant experience in complex class action litigation, consumer rights, and landlord-tenant law, including by serving as *Munguia-Brown* Class Counsel, through which they successfully navigated multiple complex motions, convinced the Court to rule in their favor after an extensive trial, and are prepared to persist through appeal. *See* Dardarian Decl. ¶¶ 3-16, 49-56 & Ex. E; Nicholas Decl. ¶¶ 2-16; McBride Decl. ¶¶ 3-5 & Ex. A. The work that Class Counsel performed in *Munguia-Brown* resulted in a complete understanding of the class claims resolved by the proposed Settlement here and gave Counsel the unique ability to fully vet Equity's Rule 68 Offer and evaluate the monetary relief provided. Dardarian Decl. ¶¶ 16. Class Counsel were prepared to commit significant resources to this matter, as they have done and continue to do in *Munguia-Brown*, had Equity's offer not provided full restitution of late fee charges and payments minus Plaintiff's offset figure, and they remain committed to protecting the best interests of the class throughout the implementation of the Settlement. *See id.* ¶ 57. Finally, proposed Class Counsel have no conflicts of interest with the Settlement Class that

931670.20

1    affect their ability to fairly and adequately represent the Class.  Dardarian Decl. ¶ 58; Nicholas Decl. ¶ 17;

2    McBride Decl. ¶ 7.

3    ### 3.    The Requirements of Rule 23(b)(3) Are Satisfied.

4          Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be

5    served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Wright

6    & Miller, Federal Practice & Procedure §§ 1777-78 (2d ed. 1986)) ("[W]hen common questions present a

7    significant aspect of the case and they can be resolved for all members of the class in a single

8    adjudication, there is clear justification for handling the dispute on a representative rather than on an

9    individual basis.").  Predominance is met if "the proposed classes are sufficiently cohesive to warrant

10   adjudication by representation." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Ruiz*

11   *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).  So long as "one or more of the

12   central issues in the action are common to the class and can be said to predominate, the action may be

13   considered proper under Rule 23(b)(3) even though other important matters will have to be tried

14   separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (citation omitted).  In the

15   settlement context, "[t]he focus is on whether a proposed class has sufficient unity so that absent members

16   can fairly be bound by decisions of class representatives." *In re Hyundai & Kia Fuel Econ. Litig.*, 926

17   F.3d at 558 (internal quotation and citation omitted).

18         Plaintiff satisfies the requirements of Rule 23(b)(3) for certifying the Settlement Class because (1)

19   the questions of law or fact common to class members predominate over any questions affecting only

20   individual members, and (2) a class action is superior to other available methods for fairly and efficiently

21   adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3).  "The matters pertinent to these findings

22   include: (A) the class members' interests in individually controlling the prosecution or defense of separate

23   actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against

24   class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in

25   the particular forum . . . ." *Id.*[9]  Each of these factors weighs in favor of certifying the Settlement Class,

26

27

28   _____

[9] The last factor – "the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D) – need not be considered "with a request for settlement-only class certification . . . for the proposal is that there be no trial." *See Anchem*, 521 U.S. at 620.

931670.20

14

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

1   consistent with the Court's multiple decisions in *Munguia-Brown* permitting that action to proceed on a

2   class basis. *See Munguia-Brown*, ECF Nos. 91, 315, 422. The proposed Class is sufficiently cohesive to

3   satisfy predominance. *See Amchem*, 521 U.S. at 623. As described above, Equity's liability and

4   entitlement to offset under Section 1671(d), its asserted affirmative defenses, and the analysis of the

5   monies owed based on classwide data all turn on predominant common questions.

6        Class action resolution is superior here because the restitutionary amounts at issue are small and

7   the class is large, making class resolution more efficient, and indicating that individual class members

8   have little interest in bringing separate, individual cases. *See* Fed. R. Civ. P. 23(b)(3)(A); *Amchem*, 521

9   U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that

10  small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or

11  her rights.") (internal quotations omitted); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

12  1996) (class treatment is superior if it will "reduce litigation costs and promote greater efficiency"). And

13  concentrating the class's claims before this Court is desirable where the Court has presided over similar

14  claims against Equity for the past nine years. Plaintiff's Counsel are unaware of any other pending

15  litigation concerning the controversy. *See* Dardarian Decl. ¶ 58.

16       In sum, the Settlement Class satisfies Rule 23 and should be certified. Plaintiff should also be

17  appointed Settlement Class Representative, and Plaintiff's Counsel should be appointed Settlement Class

18  Counsel pursuant to Rule 23(g).

19  **C.     The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved.**

20       Public policy strongly favors settlements to resolve disputes, "'particularly where complex class

21  action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556 (citation

22  omitted). Moreover, courts should defer to "the private consensual decision of the parties" to settle, *see*

23  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (internal quotation omitted), and

24  advance the "overriding public interest in settling and quieting litigation." *See Facebook, Inc. v. Pac. Nw.*

25  *Software, Inc.*, 640 F.3d 1034, 1039 (9th Cir. 2011) (internal quotation omitted); *see also Elder v. Hilton*

26  *Worldwide Holdings, Inc.*, No. 4:16-cv-00278-JST, 2020 WL 11762284, at *4 (N.D. Cal. Apr. 29, 2020)

27  ("The proposed settlement need not be ideal, but it must be fair, free of collusion, and consistent with

28  counsel's fiduciary obligations to the class.").

1    Under Federal Rule of Civil Procedure 23(e), a court must determine whether a proposed class

2    action settlement is "fair, reasonable, and adequate" and whether to give class members notice of the

3    proposed settlement and an opportunity to voice approval or disapproval of it. *See* Fed. R. Civ. P.

4    23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026;

5    Manual § 21.632. Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court

6    "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes

7    of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2) requires courts to examine whether

8    (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was

9    negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class

10   members equitably relative to each other.

11    In addition, the Ninth Circuit uses the following factors for preliminary approval, several of which

12   overlap with Rule 23(e)(2):

13    [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration
14    of further litigation; the risk of maintaining class action status throughout the trial; the
     amount offered in settlement; the extent of discovery completed and the stage of the
     proceedings; the experience and views of counsel; the presence of a governmental
15    participant; and the reaction of the class members to the proposed settlement.[10]

16   *Hanlon*, 150 F.3d at 1026; *see also Bluetooth*, 654 F.3d at 946. As discussed below, the proposed

17   Settlement satisfies each of the Rule 23(e)(2) and Ninth Circuit factors, such that notice of the proposed

18   Settlement should be sent to the Settlement Class in advance of the Final Approval Hearing.

19    **1.    <u>The Settlement Represents an Outstanding Result for the Settlement Class.</u>**

20    "[P]erhaps the most important factor" that courts consider at preliminary approval is "plaintiffs'

21   expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d

22   930, 935 (N.D. Cal. 2016) (internal quotation omitted); *accord* Settlement Guidance ¶ 1(c). This factor

23   assesses whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and

24   delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

25   including the method of processing class-member claims; (iii) the terms of any proposed award of

26

27   _____

28   [10] There is no governmental participant to this action, so that factor is not relevant here. Plaintiff will
     address the final factor, the class's reaction to the proposed settlement, in her Motion for Final Approval.

931670.20

attorney's fees, including timing of payment;[11] and (iv) any agreement required to be identified under

Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). "In determining whether the Settlement Agreement 'falls

within the range of possible approval,' the Court must focus on 'substantive fairness and adequacy' and

'consider [P]laintiffs' expected recovery balanced against the value of the settlement offer.'" *Uschold v.*

*NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (quoting *In re Tableware Antitrust*

*Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

Here, the Settlement provides the full value of the late-fee reimbursement sought by the lawsuit

and is an excellent result, especially in light of the extensive time and resources that litigation would have

required to obtain the same results. *See generally Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301

(S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (noting settlement favored where, as here, the case is

"'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the

"'inherent risks of litigation.'") (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power*

*Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). The monetary relief obtained for Settlement Class Members is

based on Equity's actual data of the late fees they were charged, reduced only by the actual costs of

Equity's late rent collection (according to plaintiffs' counsel's expert in *Munguia-Brown*) demonstrated

through the extensive trial evidence in *Munguia-Brown*. *See* Rule 68 Offer ¶ 3; Settlement Admin.

Protocol ¶ 3(b) & n.1; Dardarian Decl. ¶ 22. Accordingly, participating Class Members will obtain the full

amount that they could reasonably expect to obtain through litigation in this case without any claims

process[12] – an exemplary result at this early stage, attributable to the extensive discovery and litigation in

the parallel action. *See Hanlon*, 150 F.3d at 1026; *see also Bluetooth*, 654 F.3d at 946.

Litigation of this matter would have undoubtedly been occasioned by extensive costs, risks, and

the delay of trial and appeal against an aggressive defendant that has vigorously litigated the same claims

for more than a decade in *Munguia-Brown*. Relatedly, while Plaintiff is confident the Court would have

---

[11] Plaintiff will request the Court approve reimbursement of her attorneys' fees under the lodestar method, to be paid separately from and without any impact on the monetary relief to be provided to Class Members. *See infra* § IV.C.5.

[12] Participating Class Members will automatically be entitled to checks (or can select electronic payments), if they were the primary tenant in their unit, or account credits, and uncashed checks will be sent to California's Unclaimed Property program, so Class Members will be entitled to those funds forever. The Settlement thus effectively ensures the relief secured will make it to Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

931670.20

maintained class certification in this case, Plaintiff is also confident, based on Defendants' repeated challenges to class certification in *Munguia-Brown*, that Defendants would steadfastly oppose the maintenance of class certification here based on the same arguments as well. *See generally Hanlon*, 150 F.3d at 1026; *Bluetooth*, 654 F.3d at 946. In light of these risks, the extraordinary relief obtained without further litigation supports preliminary approval here.

In exchange for the fully compensatory reimbursements, Class Members are releasing only their claims for monetary relief relating to the Standard Late Fee that were or could have been brought in this action. *See* Rule 68 Offer ¶¶ 7, 9, 10; Dardarian Decl. ¶ 38 & Ex. B. The release thereby adheres to Ninth Circuit precedent cabining a class release to only the claims that are certified for class treatment and that are "based on the identical factual predicate" alleged in the operative complaint. *See, e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2009); *Taylor v. W. Marine Prods., Inc.*, No. 3:13-cv-04916-WHA, 2014 WL 4683926, at *13 (N.D. Cal. Sept. 19, 2014) ("Counsel must remember that any class settlement must be limited to the issues certified for class treatment and may not release claims of absent class members not certified.").

Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the action through a trial, the Settlement is a tremendous recovery that is in the Settlement Class's best interests.

### 2. Plaintiff and Class Counsel Have Adequately Represented the Settlement Class, and Their Experience and Views Support Approval.

Rule 23(e)(2)(A) asks whether the plaintiff and their counsel have adequately represented the Settlement Class. As discussed in Sections IV.B.1.d and IV.B.2, Plaintiff Van Cott and proposed Class Counsel are adequate representatives because they have no conflicts of interest with the Settlement Class and have protected the interests of the Settlement Class in securing the full value of the late-fee reimbursement sought by the lawsuit. *See Hanlon*, 150 F.3d at 1020; *Bluetooth*, 654 F.3d at 946.

Moreover, "'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted). "[P]arties represented by competent counsel are

better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citation omitted). Plaintiff's Counsel have extensive experience litigating class actions and uniquely invaluable experience litigating the same claims against the same defendant on behalf of a parallel class in the related *Munguia-Brown* case for nearly eleven years. They brought this particular expertise to bear in being able to weigh the strengths and weaknesses of Plaintiff's claims, Defendants' defenses, and the value of this Settlement. Based on that unmatched experience, Plaintiff's Counsel believe that the Settlement is fair, reasonable, and adequate – and would not have accepted the Rule 68 Offer had they thought they could achieve a better outcome through litigation. *See* Dardarian Decl. ¶¶ 2-16, 22-25, 62-65.

### 3. The Rule 68 Offer Was Accepted Only After Careful Evaluation by Plaintiff and Her Counsel.

Rule 23(e)(2)(B) assesses whether the proposed settlement was reached at arm's length, rather than in the absence of information necessary to illuminate the value of the claims. *See Hanlon*, 150 F.3d at 1027. Although the procedural context provided by the Classwide Rule 68 Offer of Judgment made for an atypical class settlement here, Plaintiff's Counsel's deep understanding of the underlying facts, class data, and complex legal issues developed over years of litigating the same issues in *Munguia-Brown* permitted them to fully and fairly evaluate the Rule 68 Offer and to appreciate that the monetary relief offered would fully reimburse the late fees sought in this lawsuit – without the extensive and costly litigation that they are still pursuing in *Munguia-Brown*. *See* Dardarian Decl. ¶¶ 2-16, 22-25, 62-65. Had Plaintiff's Counsel had any reasonable basis for believing that they could achieve better results for the class by proceeding to litigate the claims, they would have had no qualms about rejecting the Offer. *See id.* ¶ 25. But where the result provided is the best-case scenario for the Class – securing the actual late fee recovery sought on their behalf without the costs, risks, and delays of further litigation – Plaintiff's Counsel were able to conclude that accepting the Offer was in the Class's best interests.

Accordingly, in light of the result secured by the Settlement, Plaintiff's acceptance of the Rule 68 Offer on behalf of the class withstands the heightened level of scrutiny applicable to pre-certification class action settlements where there is no "evidence of collusion or other conflicts of interest." *Bluetooth*, 654 F.3d at 946-47. The Ninth Circuit has identified three "subtle signs" that may indicate collusion: "(1)

931670.20

when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (citation omitted). None of the *Bluetooth* indicia are present here. Plaintiff's Counsel will seek her attorneys' fees separately based on the lodestar method and will not receive any portion of the amount provided under the Settlement to fully compensate Class Members for the unlawful late fee. Accordingly, the amount of attorneys' fees Plaintiff's Counsel will receive is fully within the Court's discretion and will have no impact on the relief provided to the Settlement Class. And, in contrast to a clear sailing provision, the Rule 68 Offer does not prevent Defendant from opposing Plaintiff's requested attorney's fee. *See* Rule 68 Offer ¶ 4. Finally, no class member award amounts will revert to Defendant but will instead remain available for Class Members to claim through California's Unclaimed Property program. *See* Dardarian ¶¶ 45-46.

Here, there is no evidence of collusion. This factor is met notwithstanding the unique posture of the Classwide Rule 68 Offer because Plaintiff's Counsel were able to evaluate the Offer at arms' length and appreciate that accepting the amount of relief provided was in the best interests of the Class.

### 4.    The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement does not provide preferential treatment to any subset of the Settlement Class. All Settlement Class Members will be entitled to the full value of the late fees they paid or were charged, save for the $31.98 per late fee that reflects, according to plaintiffs' experts, Equity's actual average cost per late fee based on the extensive record developed in *Munguia-Brown*. Plaintiff Van Cott's restitution award under the Settlement will be determined using the same methodology as that for all other Class Members – *i.e.,* the $143.25 late fee she paid will be returned to her minus $31.98 for Equity's actual average cost per late fee. Nor does Plaintiff Van Cott's proposed service award make the Settlement inequitable. In the Ninth Circuit, service awards are routinely awarded and do not render class action settlements unfair or unreasonable. *See Staton*, 327 F.3d at 976. Moreover, $5,000 service awards are considered "presumptively reasonable" in the Northern District of California. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014).

In sum, all relevant factors set forth in Rule 23(e)(2) support approval of the Settlement, and Plaintiff has shown she is likely to obtain final approval of the proposed settlement.

### 5.    Plaintiff is Entitled to Her Reasonable Attorneys' Fees and Costs and Will Seek Them Separately from Class Member Payments.

Plaintiff's motion for attorneys' fees, expenses and costs, also to be filed during the class notice period, will seek compensation under the lodestar method, which is appropriate under Federal Rule of Civil Procedure 68, as well as in cases conferring a significant benefit on behalf of the public under California Civil Code section 1021.5, like this one.  *See Bluetooth*, 654 F.3d at 941; *Hanlon*, 150 F.3d at 1029; *see generally Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 283 (9th Cir. 2018).  Plaintiff is also entitled to seek her reasonable attorneys' fees and costs under the lodestar method based on Equity's Standard Lease.  *See e.g.*, Van Cott Decl. Ex. A ¶ 27.

Plaintiff's Counsel will apply to the Court for an award of reasonable attorneys' fees, costs and expenses not to exceed $699,000.  *See* Dardarian Decl. ¶¶ 48, 73-78; *see generally* Settlement Guidance ¶ 6.  As of June 20, 2025, Class Counsel had expended approximately 317 hours in litigating this case, incurring approximately $280,000 in fees and $4,000 in costs and expenses, and anticipate spending significantly more time and incurring additional costs through the Fairness Hearing, all of which is reflected in the $699,000.  *See id.*  Class Counsel's compensation will be determined by the Court and will not be paid from the funds to compensate Settlement Class Members.  *See* Rule 68 Offer ¶ 4.  When they file their motion for attorneys' fees, expenses and costs, Plaintiff's Counsel will demonstrate that this fee amount is reasonable based on the lodestar method, including a multiplier, and that Counsel's costs and expenses were reasonably incurred.

The Ninth Circuit "do[es] not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method.  This would make 'little logical sense,' because 'the lodestar method yields a fee that is presumptively reasonable.'"  *In re Hyundai and Kia Econ. Litig.*, 926 F.3d at 571 (citations omitted).  In any event, Plaintiff's anticipated attorneys' fee amounts to less than the benchmark of 25% that courts within the Ninth Circuit apply to common fund cases, which in this case would amount to at least $750,000 (25% of $3 million).  *See Bluetooth*, 654 F.3d at 942.

6.     The Settlement Is an Especially Excellent Result Compared to Similar Outcomes.

Consistent with the requirements set forth in the Settlement Guidance, Exhibit F to the Dardarian Declaration is a table summarizing comparable class settlements, which underscores the excellent result provided for Settlement Class Members herein.  *See* Settlement Guidance ¶ 11.

Indeed, only a few months ago, the Honorable Edward M. Chen in this District granted final approval of a class action settlement involving landlord Greystar in a case that had challenged Greystar's $100 late fee as an unlawful liquidated damages provision under California Civil Code section 1671(d).  *See* Dardarian Decl. Exs. F (Table) & G (Final Approval Order, *Zeff v. Greystar Cal., Inc.*, No. 3:20-cv-07122-EMC (N.D. Cal. Jan. 1, 2025), ECF No. 157 ("*Zeff* Final Approval Order")).  In that case,[13] the settlement class consisted of 21,898 members sharing in a non-reversionary, non-claims-made settlement fund totaling $2,467,238.40, such that gross recovery per class member was $112.67.  *See* Dardarian Decl. Ex. H (Pl.'s Suppl. Br. in Supp. of Final Approval Mot., *Zeff*, No. 3:20-cv-07122-EMC (N.D. Cal. Dec. 16, 2024), ECF No. 153).  In total, after attorneys' fees and costs, the service award, and settlement administration expenses, the class recovered $1,742,429 of the Settlement, or approximately $79.57 per class member; counsel estimated the class's net recovery to represent approximately 50% of the total late fees collected by Greystar.  *See* Dardarian Decl. Ex. I (Pl.'s Mem. of P. and A. in Supp. of Mot. for Prelim. Approval of Class Action Settlement Thereof, *Zeff*, No. 3:20-cv-07122-EMC (N.D. Cal. May 9, 2024), ECF No. 131 at 13).  The class also secured non-monetary relief in the form of Greystar recommending to its client property-owners that they include late fees of no more than $50 in their leases (as Greystar itself did not control the late fees in the leases).  *See id.*

Judge Chen found the Settlement to be "fair, reasonable, and adequate in all respects," found appropriate class counsel's request for 25% of the settlement fund as attorneys' fees, approved counsel's request for litigation costs up to $15,000 as reasonable, approved administration costs of $83,000, and awarded the named plaintiff $10,000 for their service as a class representative.  *See* Dardarian Decl. Ex. G at 1, 3-4 (*Zeff* Final Approval Order).  Judge Chen also found that class notices – consisting of email

---

[13] One of Plaintiff's Counsel's firms was Settlement Class Counsel in that matter.  *See* Nicholas Decl. ¶ 14.  As Mr. Nicholas describes in his declaration, the Settlement here provides an excellent result for Class Members and compares favorably to the Settlement approved by Judge Chen in *Zeff*.

931670.20

notices linking to a settlement website – "provided the best notice to Class Members practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable laws." *See id.* at 2. The Settlement here should likewise be found "fair, adequate, and reasonable in all respects" where it secures the maximum late fee exposure on behalf of Settlement Class Members and each of the terms compares favorably to *Zeff.*

The Settlement also compares favorably to two other Section 1671(d) settlements addressed in Exhibit F to the Dardarian Declaration. First, on January 5, 2024 in *Seltzer v. Palmer, et al.*, a case challenging a residential landlord's policy and practice of charging a fee of $75 for the late payment of rent under California Civil Code Section 1671(d), the Honorable Stuart M. Rice of the Los Angeles County Superior Court granted final approval to a class action settlement which provided $1,050,357.04 to 24,706 class members (approximately $42.51 per class member), $583,333.33 in attorney's fees and costs (33% of the gross settlement fund), a $5,000 service award, and $131,797.43 in administration expenses. *See* Dardarian Decl. Exs. F (Table) & J (Final Approval Order, *Seltzer v. Palmer, et al.*, No. 18STCV07828 (L.A. Cnty. Super. Ct. Jan. 5, 2024)). Counsel estimated that the maximum recovery for the class, if the defendant was unable to prove any offset, would be $4,470,615.46, such that class members ultimately recovered approximately 25% of the total exposure. *See id.* Ex. K (Mem. of P. and A. in Supp. of Mot. for Prelim. Approval, *Seltzer v. Palmer, et al.*, No. 18STCV07828 (L.A. Cnty. Super. Ct. Oct. 28, 2022)).

Second, in *McCumber*,[14] a case challenging landlord Invitation Homes' excessive late fees under the laws of eleven states, including California, a Texas District Court approved a settlement on behalf of 150,690 class members over eighteen objections, where the gross settlement fund totaled $7.5 million, including $1,875,000 in debt relief (approximately $12.44 per class member), $2.25 million in attorneys' fees (30% of the total recovery), up to $30,000 in litigation costs, and $5,000 each to the eleven named plaintiffs. *See id.* Exs. F (Table) & L (Final Approval Order, *McCumber, et al. v. Invitation Homes, Inc.*, No. 3:21-cv-02194-B (N.D. Tex. July 30, 2024), ECF No. 125). On average, class members recovered approximately $32.92 each ($47.80 gross). In *McCumber*, counsel estimated the total exposure to be

---

[14] Nicholas & Tomasevic is also Settlement Class Counsel in *McCumber*, and Mr. Nicholas and describes how the Settlement here compares favorably. *See* Nicholas Decl. ¶ 15.

931670.20

23

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

1  approximately $84 million before any offset, so the class's recovery was approximately 6% of the total

2  potential recovery.  *See* Nicholas Decl. ¶ 15.

3    The settlement here secures the maximum late fee exposure available in contrast to the more-

4  limited relief in *Zeff*, *Seltzer* and *McCumber*.  The Court can confidently grant preliminary approval to this

5  excellent result.

6  **D.** **The Proposed Notice Satisfies Due Process and Should Be Approved.**

7    Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under

8  the circumstances, including individual notice to all members who can be identified through reasonable

9  effort."  Under Rule 23(e)(1), the "court must direct notice in a reasonable manner to all class members

10  who would be bound by the proposal" if justified by the parties' showing.  Due process requires that

11  interested parties be provided with notice reasonably calculated under the circumstances to apprise them

12  of the pendency of the action and afford them an opportunity to present their objections.  *See Mullane v.*

13  *Cen. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Notice is satisfactory "if it 'generally describes

14  the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

15  come forward and be heard.'"  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

16  (citation omitted).

17    The proposed notice here is the "best notice . . . practicable under the circumstances," (Fed. R.

18  Civ. P. 23(c)(2)(B)), is "reasonable," (Fed. R. Civ. P. 23(e)(1)), and is consistent with the Northern

19  District of California's Procedural Guidance for Class Action Settlements as well as the notice authorized

20  by this Court on multiple occasions in *Munguia-Brown*.  The content of the proposed Class Notice

21  documents,[15] including notice of Plaintiff's intended motions for attorneys' fees and costs and class

22  representative service award, is "reasonably calculated, under all the circumstances, to apprise interested

23  parties of the pendency of the action and afford them an opportunity to present their objections."

24  *Mullane*, 339 U.S. at 314; *accord* Fed. R. Civ. P. 23(h)(1).

25

26

27

28

---

[15] They "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

931670.20

24

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

Accordingly, the Court should direct notice pursuant to the Settlement Administration Protocol.

**E.    The Court Should Approve the Proposed Schedule, Including Setting a Date for the Fairness Hearing.**

Once a court grants preliminary approval and notice is provided, the court conducts a "fairness hearing," at which all interested parties have an opportunity to be heard. At such a hearing, the court conducts a substantive evaluation of the proposed settlement to determine whether it is "fundamentally fair, adequate, and reasonable." *See Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Plaintiff proposes the following schedule based on the Parties' agreement, *see* ECF No. 13:

| Case Event | Date |
|---|---|
| Deadline for Equity to Provide Class List, including records regarding Class Member Settlement Payments, to Administrator | July 25, 2025 |
| Deadline for Administrator to Disseminate Class Notice | August 22, 2025, or 21 days from Preliminary Approval Order, whichever is later |
| Deadline for Plaintiff to file Motions for Attorneys' Fees, Expenses, and Costs, and for Service Award to Plaintiff Van Cott | August 22, 2025 |
| Deadline for Class Members to Object or Opt-Out of the Settlement | October 21, 2025, or 60 days from date class notice is disseminated, whichever is later |
| Deadline for Plaintiff to file Motion for Final Approval of Settlement | October 20, 2025 |
| Fairness Hearing | November 21, 2025, or as soon thereafter as the Court is available |

## V.    CONCLUSION

Plaintiff respectfully requests that this Court: (1) preliminarily approve the Settlement; (2) certify the proposed Settlement Class and appoint Plaintiff Van Cott and her counsel as representatives; (3) approve and direct the dissemination of the proposed class notice; and (4) schedule a fairness hearing.

Dated: June 27, 2025

Respectfully submitted,

DARDARIAN HO KAN & LEE

*/s/ Katharine L. Fisher*
Katharine L. Fisher

Attorneys for Plaintiff and the Putative Class

25

PLS.' MEM. OF POINTS & AUTH. IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 25-CV-02358-JSW

931670.20