Margaret McBride (SBN 294066)
mmcbride@clsepa.org
COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
1861 Bay Road
East Palo Alto, CA 94303
Tel:  (650) 326-6440
Fax:  (866) 688-5204

Linda M. Dardarian (SBN 131001)
ldardarian@dhkl.law
Andrew P. Lee (SBN 245903)
alee@dhkl.law
Katharine F. Trabucco (SBN 305413)
ktrabucco@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Attorneys for Plaintiff and the Settlement Class
(*Additional Counsel for Plaintiff and the
Settlement Class listed on following page*)

UNITED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COURTNEY VAN COTT individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>EQUITY RESIDENTIAL, a real estate investment trust, ERP OPERATING LIMITED PARTNERSHIP, a partnership, EQUITY RESIDENTIAL MANAGEMENT, L.L.C.<br><br>        Defendants. | Case No.: 25-cv-02358-JSW<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      January 9, 2026<br>Time:      9:00 a.m.<br>Dept:      Courtroom 5<br>Before:  Hon. Jeffrey S. White |

Craig Nicholas (SBN 178444)
craig@nicholaslaw.org
Alex Tomasevic (SBN 245595)
alex@nicholaslaw.org
NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Floor
San Diego, CA 92101
Tel:  (619) 325-0492
Fax:  (619) 325-0496

Attorneys for Plaintiff and the Settlement Class

1
2

# TABLE OF CONTENTS

<u>Page</u>

3    NOTICE OF MOTION AND MOTION..........................................................................1

4    MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

5    I.    INTRODUCTION ...........................................................................................1

6    II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .....................2

7          A.    Summary of the Proposed Settlement ....................................4

8          B.    The Court Preliminarily Approved the Settlement......................5

9          C.    The Distribution of Notice to Class Members Was Successful and Complied with
                 the Court's Order. ........................................................5

10

11         D.    Class Members Reacted Positively to the Settlement. ..................7

12   III.  ARGUMENT ..................................................................................7

13         A.    The Settlement Agreement Is Fair and Reasonable and Should Be
                 Finally Approved...............................................................7

14
                 1.    The Class Representative and Class Counsel Have Adequately Represented
15                     the Class............................................................9

16               2.    The Settlement Was Negotiated at Arm's Length.......................9

17               3.    The Settlement Represents an Outstanding Result for the Settlement Class,
                       Achieving the Full Recovery Sought Without Further Litigation.............11

18               4.    The Settlement Treats Class Members Equitably Relative to Each Other......14

19               5.    Class Counsel's Experience and Views Support Approval.................14

20               6.    Class Notice Has Been Issued. .....................................15

21               7.    The Reaction of Settlement Class Members to the Proposed
                       Consent Decree....................................................15
22

23         B.    The Proposed Service Award Should Be Approved. .....................16

24         C.    Plaintiff's Motion for Reasonable Attorneys' Fees and Costs Should be Approved. .16

25   IV.   CONCLUSION .................................................................................16

26
27
28

942033.13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ..............................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth")*,
    654 F.3d 935 (9th Cir. 2011) ..........................................................................................*passim*

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...................................................................................8, 14, 15

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) .............................................................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................*passim*

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2009) ...................................................................................................13

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) (en banc) ..........................................................................7, 9, 11

*Laguna v. Coverall N. Am., Inc.*,
    753 F.3d 918 (9th Cir. 2014), *vacated after appeal dismissed*, 772 F.3d 608 (2014) ..................10

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .....................................................................................................8

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................................................................12

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) ............................12

*Munguia-Brown, et al. v. Equity Residential, et al.*,
    No. 4:16-cv-01225-JSW-TSH ....................................................................................*passim*

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................14, 15

*Officers for Justice v. Civ. Serv. Comm'n of City & County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................................7, 8

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................8, 12, 14

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) .................................................................................... 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................... 14

*Taylor v. W. Marine Prods., Inc.*,
  No. 3:13-cv-04916-WHA, 2014 WL 4683926 (N.D. Cal. Sept. 19, 2014) ................ 13

*In re Toys "R" Us- Del., Inc.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................... 8

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) ............................................................................. 12

**Federal Statutes**

Class Action Fairness Act ................................................................................................ 2

**State Statutes**

Cal. Civ. Code § 1671(d) ................................................................................................ 2

**Rules**

Fed. R. Civ. P.
  23 .............................................................................................................. 1, 2, 15
  23(a) ..................................................................................................................... 5
  23(b)(3) ................................................................................................................ 5
  23(c)(2)(B) .......................................................................................................... 15
  23(e) ......................................................................................................... 7, 11, 15
  23(e)(1) ............................................................................................................... 15
  23(e)(2) ............................................................................................................. 7, 8
  23(e)(2)(A) ........................................................................................................... 9
  23(e)(2)(B) ........................................................................................................... 9
  23(e)(2)(C) .......................................................................................................... 11
  23(e)(3) ................................................................................................................. 4
  68 ............................................................................................................... *passim*

### <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2026 at 9:00 a.m., or as soon thereafter as the Court is available, in the Courtroom of the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Plaintiff Courtney Van Cott will and hereby does move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order granting final approval of the Parties' proposed class action settlement. Plaintiff's motion is based on this Notice, the accompanying memorandum of points and authorities, the settlement set forth in the Accepted Rule 68 Offer and Settlement Administration Protocol, the accompanying declarations of Linda M. Dardarian and Meagan Brunner, the argument of counsel, all papers and records on file in this case, and such other matters as the Court may consider.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    <u>INTRODUCTION</u>

Plaintiff Courtney Van Cott requests final approval of a class action settlement that provides Settlement Class Members the full value of the late-fee reimbursements sought in this lawsuit. The Court preliminarily approved the proposed settlement on August 14, 2025, ECF No. 25, Order Granting Prelim. Approval ("Prelim. Approval Order"). Since then, the Parties have caused Notice of the Settlement to issue in conformance with the Court's Order. *See* Decl. of Linda M. Dardarian in Supp. of Pl's. Mot. for Final Approval of Settlement ("Dardarian Final Decl."), submitted herewith, ¶¶ 2-4; *see also* Decl. of Meagan Brunner (Simpluris) in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Statement of Compliance with Notice Requirements ("Brunner Decl."), submitted herewith. The deadline for Class Members to opt-out of or object to the settlement was October 27, 2025; no class members opted out of or objected to the Settlement. *See* Brunner Decl. ¶ 15-19. One hundred and sixty-one (161) Class Members took advantage of the option to receive restitution payments electronically, and seven (7) Class Members (*i.e,.* 0.03%) disputed their calculated award amounts, which the administrator addressed with the Parties' input. *See id.* ¶ 19. The proposed Settlement is fair, adequate, and reasonable, and satisfies all of the criteria for final approval

1    under Rule 23 of the Federal Rules of Civil Procedure and Ninth Circuit law.  Accordingly, Plaintiff

2    respectfully requests that the Court grant final approval of the Settlement.

3    ## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

4            Plaintiff and proposed Settlement Class representative Courtney Van Cott is a former tenant of

5    Equity Residential in California who was charged and paid a late fee based on Equity's former "Standard

6    Late Fee" in September 2023.  *See* ECF No. 1-1, Complaint for Restitution ("Compl.") ¶ 3; *see also* ECF

7    No. 16-4, Decl. of Pl. Courtney Van Cott in Supp. of Pl's. Mot. for Prelim. Approval of Class Action

8    Settlement ("Van Cott Decl."), ¶¶ 2-3.  Under the Standard Late Fee, in place from June 2008 through

9    April 2024, Equity charged its California tenants a fee equal to 5% of their monthly rent, or a minimum

10    of $50, for the late payment of rent.  Compl. ¶ 1.  On April 8, 2024 after trial in the longstanding related

11    case called *Munguia-Brown, et al. v. Equity Residential, et al.*, No. 4:16-cv-01225-JSW-TSH, this Court

12    held that Equity's Standard Late Fee is a liquidated damages penalty that is null and void under

13    California Civil Code section 1671(d) because it is excessive and bears no relation to any actual damages

14    incurred by Defendants when rent is paid late.  *See id.* ¶ 2 & Ex. A (*Munguia-Brown* Court's Apr. 8,

15    2024 Findings of Fact and Conclusions of Law, ECF No. 546 at ¶ 61)), available at 2024 WL 1530571

16    (N.D. Cal. Apr. 8, 2024).  Plaintiff Van Cott is one of 21,800 proposed Settlement Class Members here

17    who were charged Equity's Standard Late Fee, but who are not entitled to monetary relief in the

18    *Munguia-Brown* case because they were first charged the Standard Late Fee after the class definition had

19    closed in that case.  *See id.* Compl. ¶ 3; *see also* ECF No. 16-1, Decl. of Linda M. Dardarian in Supp. of

20    Pl's. Mot. for Prelim. Approval ("Dardarian Prelim. Decl."), ¶ 59.

21            On January 16, 2025, Ms. Van Cott filed this action in Alameda Superior Court, seeking to

22    represent a class defined as:

23            All Equity Residential tenants in the State of California who, from October 29,
        2022 through April 30, 2024, were first charged one or more late fee(s) under
24        Equity Residential's standard late fee provision: 5% of the outstanding balance
        owed (capped at 5% of the total amount of monthly recurring charges or $50,
25        whichever is greater.

26    *See* Compl. ¶ 21.  On March 7, 2025, Defendants removed this action to the United States District Court

27    for the Northern District of California under the Class Action Fairness Act ("CAFA"), ECF No. 1

28

(Notice of Removal), and on March 11, 2025 the case was reassigned to this Court after being related to the *Munguia-Brown* action.  *See Munguia-Brown*, ECF No. 575, Related Case Order.

On April 25, 2025, Equity served on Plaintiff a Classwide Offer of Judgment Pursuant to Rule 68 of the Federal Rules of Civil Procedure (the "Rule 68 Offer"), in which Equity offered to allow Plaintiff and the putative class to take judgment against it in the total amount of $2,934,620 in satisfaction of all claims asserted in the Complaint, in addition to separately covering the costs of settlement administration and permitting Plaintiff to request the Court to reimburse her reasonable attorneys' fees and expenses and provide her a class representative service award.  *See* Dardarian Prelim. Decl., Ex. A ("Rule 68 Offer") ¶¶ 1-4.  Furthermore, the Offer does not release claims beyond those for monetary relief asserted in the Complaint and is based on Equity's actual tenant ledger data reflecting class members' actual Standard Late Fee charges and payments with an amount added to account for a potential five percent margin of error in the calculations.  *See id.* Dardarian Prelim. Decl. ¶¶ 22-25.  Plaintiff's Counsel believes that this settlement provides full late fee restitution to Plaintiff and the Class.  *See id.* ¶ 25.  Based on Plaintiff's Counsel's evaluation and understanding, and against the backdrop of their extensive experience litigating these same issues against Equity in *Munguia-Brown*, Plaintiff's Counsel determined the class would be unlikely to recover more than the amount offered and that securing such amounts through summary judgment or trial would require significant time and resources.  *See id.*  Accordingly, on May 9, 2025, Plaintiff accepted the Rule 68 Offer based on her understanding of its terms and subject to the Court's approval of the settlement.  *See id.* ¶ 25 & Ex. C.

Following Plaintiff's acceptance, the Parties conferred and negotiated the Settlement Administration Protocol addressing ancillary terms that were not covered by the Rule 68 Offer.  *See* Dardarian Prelim. Decl. ¶ 26 & Ex. D ("Settlement Admin. Protocol").  Shortly before Plaintiff filed her Motion for Preliminary Approval on June 27, 2025, the Parties began exploring the possibility of agreeing upon a maximum amount that Equity would pay for Plaintiff's reasonable attorneys' fees and costs, ultimately reaching agreement on September 4, 2025 that Plaintiff would request up to $430,000 for fees and costs.  *See* ECF No. 28-1, Decl. of Linda M. Dardarian in Supp. of Pl.'s Mot. for Reasonable Attorneys' Fees and Costs ("Dardarian Fee Decl.") ¶ 26.  Plaintiff submitted her Motions for Reasonable

Attorneys' Fees and Costs and a Class Representative Service Award on September 12, 2025. ECF Nos. 28-29.

**A.    Summary of the Proposed Settlement**

Together, the Accepted Rule 68 Offer (Dardarian Prelim. Decl. Ex. A) and the Settlement Administration Protocol (*id.* Ex. D) set forth the Parties' entire settlement agreement. *See* Fed. R. Civ. P. 23(e)(3). The Settlement Class is defined to match the definition set forth in Plaintiff's Complaint. *Compare* Rule 68 Offer ¶ 2; *with* Compl. ¶ 21; *see generally* N.D. Cal. Procedural Guidance for Class Action Settlements ("Settlement Guidance") ¶ 1(a). The claims to be released by participating Class Members under the Settlement are the same as the claims in the operative complaint. *See* Settlement Guidance ¶ 1(b).

The Settlement provides $2,272,224 in restitution to Settlement Class Members who were charged and paid the Standard Late Fee between October 29, 2022 and April 30, 2024. *See* Dardarian Prelim. Decl. Ex. A (Rule 68 Offer) ¶ 3. The Settlement Administrator will automatically distribute these funds to participating Settlement Class Members without anyone having to file a claim form. Only class members who dispute the calculation of their reimbursements have needed to provide supporting documentation. The amount of restitution to be provided to each Settlement Class Member is based on the Standard Late Fees paid by that Class Member, according to Equity's tenant-ledger data, minus $31.98 per late fee charge – which is Equity's actual average cost-per-late-fee of collecting late rent during the class period according to plaintiffs' expert in *Munguia-Brown*. *See id.*; Settlement Admin. Protocol ¶ 3(b); *see also Munguia-Brown* ECF No. 557-5 ¶ 18 (Post-Trial Decl. of Andrew D. Schwarz). The Administrator will send checks to all Settlement Class Members who were the primary tenant of their unit, unless they opt to receive electronic payments. *See* Settlement Admin. Protocol ¶ 6(b). Class Members will have 180 days to cash their checks before the funds are deposited with the state of California's Unclaimed Property program (and remain available for claiming at any time). *See id.* ¶ 6(e).

The Settlement further provides $662,396 in account credits to reduce Standard Late Fees that class members were charged but had not paid as of July 18, 2025,[1] and which remain as debts on their

---

[1] Equity updated its data analysis before Class Notice was disseminated, so this date was updated from April 3, 2025 originally set forth in the Rule 68 Offer. *See* Dardarian Fee Decl. ¶ 21 & n.1.

1  tenant ledgers.  *See* Rule 68 Offer ¶ 3; Settlement Admin. Protocol ¶ 3(b) & n.1.  These credits also

2  represent the amount charged minus $31.98 per late fee – again based on Equity's actual average cost per

3  late fee, according to plaintiffs' expert in *Munguia-Brown*.  Equity will have 75 days from the date of

4  Final Approval to apply the account credits to tenant accounts.  Settlement Admin. Protocol ¶ 6(f).  If a

5  Settlement Class Member who would be entitled to an account credit has moved from their Equity

6  apartment and no longer has a current tenant account, Equity will notify its applicable collection agency

7  to apply the credit to the Class Member's outstanding debt, or if the Class Member paid their debt upon

8  moveout, Equity will notify the Administrator to issue the Class Member a check.  *Id*.

9  **B.    The Court Preliminarily Approved the Settlement**

10         On August 14, 2025, the Court granted preliminary approval of the proposed Settlement.

11  Prelim. Approval Order; *see also* ECF No. 27, Order Regarding Case Schedule (modifying

12  preliminary-approval deadlines).  In its Order, the Court certified the following Settlement Class

13  pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), as requested in Plaintiff's Complaint:

14         All Equity Residential tenants in the State of California who, from October 29,
       2022 through April 30, 2024, were first charged one or more late fee(s) under
15     Equity Residential's former "Standard Late Fee" provision: 5% of the
       outstanding balance owed (capped at 5% of the total amount of monthly
16     recurring charges) or $50, whichever is greater.

17  Prelim. Approval Order ¶¶ 1-3.  The Court appointed Plaintiff Courtney Van Cott as the Class

18  Representative and Plaintiff's Counsel as Class Counsel.  *Id.* ¶¶ 4-5.  The Court also directed notice to

19  the Settlement Class, appointed Simpluris as Settlement Administrator, *see id.*  ¶¶ 9-11, and set a date

20  for the fairness hearing.  *See* ECF No. 27.

21  **C.    The Distribution of Notice to Class Members Was Successful and Complied with the
       Court's Order.**
22

23         As set forth in the Brunner Declaration, filed herewith, after preliminary approval, Simpluris

24  effectuated notice pursuant to the Court's Preliminary Approval Order.  *See also* Dardarian Final Decl.

25  ¶ 2-4.

26         The Court-Approved Notice explained the case, the terms of the settlement, the class release,

27  Class Members' rights and options under the settlement – including to dispute their award amount, to

28  opt-out, or to object, as well as Plaintiff's planned motions for up to $430,000 for her reasonable

1    attorneys' fees and costs and for the $5,000 service award to the Class Representative.  *See* Prelim.

2    Approval Order ¶ 9; Dardarian Prelim. Decl. Ex. D (Settlement Admin. Protocol, Exs. 1-3 (Long-

3    Form, Email, and Postcard Notices)).  The e-mail and post-card notices sent to each Class Member

4    also specified the restitution and/or account credit calculated for that Class Member under the

5    Settlement.  *See* Dardarian Prelim. Decl. Ex. D (Settlement Admin. Protocol, Exs. 2 and 3).

6              On September 12, 2025, Simpluris disseminated the e-mail notice (Settlement Admin. Protocol

7    Ex. 2) to Class Members whose e-mail addresses Equity had available in its tenant data, updated through

8    an industry-standard email change of address database.  *See* Brunner Decl. ¶ 10.  Emails to 324 Class

9    Members were returned undelivered.  Of these, 324 Class Members 274 had a valid mailing address on

10   the Class List, so Simpluris sent the Postcard Notice by U.S. mail to those Settlement Class Members.

11   *See id.*; *see also* Settlement Guidance (Final Approval) ¶ 1.  For 782 Class Members who had no e-

12   mail address as well as 274 of the Class Members whose emails were returned undeliverable,

13   Simpluris sent postcard notice (Settlement Admin. Protocol Ex. 3) via U.S. Mail to the Class Members'

14   mailing address in Equity's tenant records, after any updating based on the National Change of Address

15   database.  *See* Brunner Decl. ¶ 11.  Twenty-nine (29) (or 2.7% of these notices were ultimately returned

16   as undeliverable after Simpluris performed a skip trace.  *See id.* ¶ 12; *see also* Settlement Guidance

17   (Final Approval) ¶ 1.

18             Class Members had until October 6, 2025 to dispute their award amounts, *see* ECF No. 27,

19   which seven did.  *See* Brunner Decl. ¶ 19.  None of the seven Class Members who disputed their

20   awards provided sufficient documentation to overturn the original data-based calculation after the

21   Class Member had a chance to supplement the information to support their claim, so none of the

22   awards were adjusted.  *See id.*

23             Counsel for the Parties learned just prior to Plaintiff's filing of this motion that Simpluris did

24   not perform a skip trace 50 of the 324 Class Members whose emails were returned undeliverable but

25   for whom there was no mailing address in Equity's tenant records.  Dardarian Final Decl. ¶ 4; Brunner

26   Decl. ¶ 10.  Simpluris is currently performing a skip trace and will send post-card notice to the Class

27   Members for whom they are able to find mailing addresses.  *Id.*  Given that there is nearly two months

28   before the January 9, 2026 Fairness Hearing, Plaintiff and Class Counsel believe that should any of

1    these Class Members decide to opt out, object, dispute their settlement awards, or select an electronic

2    payment option, they should be allowed to do so up to 45 days after notice is sent to them.  Dardarian

3    Final Decl. ¶ 4.  Plaintiff's Counsel will update the Court regarding the result of this additional round

4    of notice prior to the January 9, 2026 Fairness Hearing.

5    **D.    Class Members Reacted Positively to the Settlement.**

6          Class Members had until October 27, 2025 to opt out of or to object to the settlement.  *See* ECF

7    No. 27.  No class members opted out of the settlement or objected to it.  *See* Brunner Decl. ¶¶ 15-18.

8    In other words, to date all Class Members covered by the Settlement chose to accept it – an

9    outstanding result.  Plaintiff's counsel will update the Court prior to the final approval hearing

10   regarding any additional opt outs and respond to any objections filed by Class Members who received

11   the later mailing.

12                                  **III.    ARGUMENT**

13   **A.    The Settlement Agreement Is Fair and Reasonable and Should Be Finally Approved.**

14         The law favors the settlement of class actions.  *See, e.g., In re Hyundai and Kia Fuel Econ.*

15   *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).  "[T]he decision to approve or reject a settlement is

16   committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants, and

17   their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

18   (internal citations and quotations omitted).

19         To grant final approval of a class action settlement, "Fed. R. Civ. P. 23(e) requires the district

20   court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."

21   *Hanlon,* 150 F.3d at 1026; *see also Officers for Justice v. Civ. Serv. Comm'n of City & County of San*

22   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that the "universally applied standard" is whether

23   the settlement is "fundamentally fair, adequate, and reasonable").  "It is the settlement taken as a

24   whole, rather than the individual component parts, that must be examined for overall fairness."

25   *Hanlon*, 150 F.3d at 1026.  Specifically, Rule 23(e)(2) requires the Court to consider whether:

26                (A) the class representatives and class counsel have adequately represented the
             class; (B) the proposal was negotiated at arm's length; (C) the relief provided
27           for the class is adequate, taking into account: (i) the costs, risks, and delay of
             trial and appeal; (ii) the effectiveness of any proposed method of distributing
28           relief to the class, including the method of processing class-member claims; (iii)
             the terms of any proposed award of attorney's fees, including timing of

1   payment; and (iv) any agreement required to be identified under Rule 23(e)(3);
    and (D) the proposal treats class members equitably relative to each other.

2

Fed. R. Civ. P. 23(e)(2).

3

4   Moreover, under well-settled Ninth Circuit precedent, in order to assess a class action

settlement, courts must balance several similar factors, including the following "*Hanlon* factors":

5

6   [t]he strength of plaintiffs' case; the risk, expense, complexity, and likely
    duration of further litigation; the risk of maintaining class action status
    throughout the trial; the amount offered in settlement; the extent of discovery
    completed and the stage of the proceedings; the experience and views of
    counsel; the presence of a governmental participant;[2] and the reaction of the
    class members to the proposed settlement.

7

8

9   *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). These

10  same factors are also sometimes referred to as the eight "*Churchill* factors." *See, e.g.*, *In re Bluetooth*

11  *Headset Prods. Liab. Litig. ("Bluetooth")*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill.,*

12  *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

13  The Court must demonstrate comprehensive consideration of all factors; however, in

14  conducting this analysis, the Ninth Circuit has noted that "'it is the very uncertainty of outcome in

15  litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'"

16  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting *Officers for Justice*, 688

17  F.2d at 625). Accordingly, when determining whether to grant final approval, the Court's role in

18  reviewing "what is otherwise a private consensual agreement negotiated between the parties to a

19  lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not

20  the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

21  settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*,

22  688 F.2d at 625; *see also In re Toys "R" Us- Del., Inc.- Fair & Accurate Credit Transactions Act*

23  *(FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014).

24  For several reasons, the proposed Settlement clearly meets the requirements for final approval.

25

26

27

28

---

[2] There is no governmental participant to this action, so that factor is not relevant here.

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class.

Rule 23(e)(2)(A) asks whether the plaintiff and their counsel have adequately represented the Settlement Class.  As this Court previously found when it certified the Settlement Class and preliminarily approved the Settlement, the Class Representative and Class Counsel have adequately represented the Class.  *See* Prelim. Approval Order ¶¶ 4-5; *see generally* Fed. R. Civ. P. 23(e)(2)(A). As demonstrated by the supporting declarations,[3] Class Representative Van Cott and Class Counsel are adequate representatives because they have no conflicts of interest with the Settlement Class and have protected the interests of the Settlement Class in securing the full value of the late-fee reimbursement sought by the lawsuit.  *See Hanlon*, 150 F.3d at 1020; *Bluetooth*, 654 F.3d at 946.  This factor supports final approval.

### 2.    The Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) assesses whether the proposed settlement was reached at arm's length, rather than in the absence of information necessary to illuminate the value of the claims.  *See Hanlon*, 150 F.3d at 1027; *In re Hyundai and Kia*, 926 F.3d at 570 ("'[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.'") (quoting *Rodriguez*, 563 F.3d at 965).

Although the procedural context provided by the Classwide Rule 68 Offer of Judgment made for an atypical class settlement here, Plaintiff's Counsel's deep understanding of the underlying facts, class data, and complex legal issues developed over years of litigating the same issues in *Munguia-Brown* permitted them to fully and fairly evaluate the Rule 68 Offer and to appreciate that the monetary relief offered would fully reimburse the late fees sought in this lawsuit – without the extensive and costly litigation that they are still pursuing in *Munguia-Brown*.  *See* Dardarian Prelim. Decl. ¶¶ 2-16, 22-25, 62-65.  Had Plaintiff's Counsel had any reasonable basis for believing that they could achieve better results for the class by proceeding to litigate the claims, they would have had no qualms about rejecting the Offer.  *See id.* ¶ 25.  But where the result provided is the best-case scenario for the Class – securing the

---

[3] *See* Dardarian Prelim. Decl., ¶¶ 3-16, 49-58 & Ex. E; ECF No. 16-2, Decl. of Margaret McBride in Supp. of Pl's. Mot. for Prelim. Approval, ¶¶ 3-7 & Ex. A; ECF No. 16-3, Decl. of Craig Nicholas in Supp. of Pl's. Mot. for Prelim. Approval, ¶¶ 2-17; ECF No. 16-4, Decl. of Pl. Courtney Van Cott in Supp. of Pl's. Mot. for Prelim. Approval, ¶¶ 5-9.

actual late fee recovery sought on their behalf without the costs, risks, and delays of further litigation –

Plaintiff's Counsel were able to conclude that accepting the Offer was in the Class's best interests.

Accordingly, in light of the result secured by the Settlement, Plaintiff's acceptance of the Rule 68

Offer on behalf of the class withstands the heightened level of scrutiny applicable to pre-certification

class action settlements where there is no "evidence of collusion or other conflicts of interest."

*Bluetooth*, 654 F.3d at 946-47.  The Ninth Circuit has identified three "subtle signs" that may indicate

collusion:

> (1) when counsel receive a disproportionate distribution of the settlement, or
> when the class receives no monetary distribution but class counsel are amply
> rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing
> for the payment of attorneys' fees separate and apart from class funds . . . ; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather
> than be added to the class fund.

*Id.* (citation omitted).

The mere presence of *Bluetooth* indicia does not foreclose settlement approval, and Plaintiff's

reaching an agreement – after filing her Motion for Preliminary Approval – as to the maximum amount

of attorneys' fees and costs she would request from the Court to avoid a contested motion should not

be seen as evidence of collusion.  Where "the fee award is clearly reasonable as viewed through the

appropriate application of either the lodestar or percentage-of-recovery methods, the chance of

collusion narrows to a slim possibility."  *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir.

2014), *vacated after appeal dismissed*, 772 F.3d 608 (2014).  Moreover, "it is sufficient that a district

court recognizes and balances potentially collusive provisions … against the other terms of the

settlement agreement."  *Id.*  "It is the settlement taken as a whole, rather than the individual component

parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.

Here, the Parties did not begin to negotiate Plaintiff's attorneys' fees and costs until well after

reaching agreement on all substantive and ancillary terms of the Settlement; indeed, those discussions

did not begin until shortly before the deadline for Plaintiff's Motion for Preliminary Approval.  *See*

Dardarian Fee Decl. ¶ 26.  Thus, there was no opportunity for Class Counsel to "pursu[e] their self-

interest to the detriment of the class's interest."  *Laguna*, 753 F.3d at 925.  Moreover, as set forth in

Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, ECF No. 28, and the Declaration of

Linda M. Dardarian, filed herewith, the amount sought, which reflects a 9.8% discount on Class

Counsel's lodestar even after the exercise of significant billing judgment, is amply justified under the

lodestar method – with hours supported by contemporaneous billing records and hourly rates deemed

reasonable by courts throughout California and a recognized attorney-fee expert.  *See* ECF No. 28-1

(Dardarian Fee Decl.); *see also* Dardarian Final Decl. ¶ 8.  And, even though a percentage-of-the-fund

cross-check "would make little logical sense" where "the lodestar method yields a fee that is

presumptively reasonable," *see In re Hyundai & Kia*, 926 F.3d at 571 (citation omitted), and class

members' awards are based on the precise data-based amounts they are owed and so will not be

impacted by the Court's order on fees and costs, Plaintiff also demonstrated that the requested

$430,000 in total fees and costs is less than 15% of the $2,934,620 total value of monetary relief to

class members, which is well below the Ninth Circuit's 25% presumptively reasonable benchmark.

*See* ECF No. 28 at 10 (citing *Clayborne v. Newtron, LLC*, No. 4:19-cv-07624-JSW, 2023 WL

5748773, at *5-6 (N.D. Cal. Sept. 6, 2023)).  Finally, when the clear-sailing arrangement is viewed

within the context of the Settlement as a whole – including its providing class members the full value

of restitution sought in the lawsuit – it becomes obvious that there has been no collusion.  Put

differently, the Settlement's substantial benefits demonstrate that the interests of Class Counsel did not

"infect the negotiations."  *Bluetooth*, 654 F.3d at 947.

The arm's-length negotiations and absence of collusion supports final approval of the proposed Settlement.

### 3.  The Settlement Represents an Outstanding Result for the Settlement Class, Achieving the Full Recovery Sought Without Further Litigation.

The third Rule 23(e) factor assesses whether:

> the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  "In determining whether the Settlement Agreement 'falls within the range of

possible approval,' the Court must focus on 'substantive fairness and adequacy' and 'consider

1    [P]laintiffs' expected recovery balanced against the value of the settlement offer.'" *Uschold v. NSMG*

2    *Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (quoting *In re Tableware Antitrust Litig.*, 484

3    F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

4          The Ninth Circuit further requires the Court to consider the extent of discovery completed and the

5    stage of the proceedings to confirm that counsel were fully informed of the facts and issues at stake and

6    equipped with sufficient information to come to a fair settlement. *See Linney v. Cellular Alaska P'ship*,

7    151 F.3d 1234, 1239 (9th Cir. 1998); *Rodriguez*, 563 F.3d at 967 (affirming the district court's

8    granting final approval where the court "could find that counsel had a good grasp on the merits of their

9    case before settlement talks began"); *Hanlon*, 150 F.3d at 1027 (affirming the district court's approval

10   of class settlement where "[t]here [was] no evidence to suggest that the settlement was negotiated in

11   haste or in the absence of information illuminating the value of plaintiffs' claims").

12         Here, the Settlement provides the full value of the late-fee reimbursement sought by the lawsuit

13   and is an excellent result, especially in light of the extensive time and resources that litigation would have

14   required to obtain the same results. *See generally Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301

15   (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (noting settlement favored where, as here, the case

16   is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the

17   "'inherent risks of litigation.'") (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power*

18   *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).  The monetary relief obtained for Settlement Class Members is

19   based on Equity's actual data of the late fees they were charged, reduced only by the actual costs of

20   Equity's late rent collection (according to plaintiffs' counsel's expert in *Munguia-Brown*) demonstrated

21   through the extensive trial evidence in *Munguia-Brown*.  *See* Rule 68 Offer ¶ 3; Settlement Admin.

22   Protocol ¶ 3(b) & n.1.  Accordingly, participating Class Members will obtain the full amount that they

23   could reasonably expect to obtain through litigation in this case without any claims process – an

24   exemplary result at this early stage, attributable to the extensive discovery and litigation in the parallel

25   *Munguia-Brown* action that fully equipped Class Counsel with the information necessary to come to a fair

26   settlement.  *See Rodriguez*, 563 F.3d at 967; *Hanlon*, 150 F.3d at 1026; *see also Bluetooth*, 654 F.3d at

27   946.  The method through which this relief will be provided – restitution awards to be mailed as checks

28   save for the 161 class members who opted for electronic payments, as well as credits deposited directly

1  into current tenants' accounts, without any need to submit claims or supporting documentation – is also

2  fair, reasonable, and adequate.

3      In exchange for the fully compensatory reimbursements, Class Members are releasing only their

4  claims for monetary relief relating to the Standard Late Fee that were or could have been brought in this

5  action.  *See* Dardarian Prelim. Decl. ¶ 38 and Ex. A thereto (Rule 68 Offer) ¶¶ 7, 9, 10.  The release

6  thereby adheres to Ninth Circuit precedent cabining a class release to only the claims that are certified for

7  class treatment and that are "based on the identical factual predicate" alleged in the operative complaint.

8  *See, e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2009) (citation omitted); *Taylor v. W.*

9  *Marine Prods., Inc.*, No. 3:13-cv-04916-WHA, 2014 WL 4683926, at *13 (N.D. Cal. Sept. 19, 2014)

10  ("Counsel must remember that any class settlement must be limited to the issues certified for class

11  treatment and may not release claims of absent class members not certified.").

12      Moreover, while Plaintiff remains convinced as to the strength of her claims, litigation of this

13  matter would have undoubtedly been occasioned by extensive costs, risks, and the delay of trial and

14  appeal against an aggressive defendant that has vigorously litigated the same claims for more than a

15  decade in *Munguia-Brown*.  Relatedly, while Plaintiff is confident the Court would have maintained class

16  certification in this case, Plaintiff is also confident, based on Defendants' repeated challenges to class

17  certification in *Munguia-Brown*, that Defendants would steadfastly oppose the maintenance of class

18  certification here based on the same arguments as well.  *See generally Hanlon*, 150 F.3d at 1026;

19  *Bluetooth*, 654 F.3d at 946.  In light of these risks, the extraordinary relief obtained without further

20  litigation supports final approval here.

21      Finally, the Parties' agreement regarding Plaintiff's attorneys' fees and costs supports

22  adequacy.  Plaintiff's Motion for Reasonable Attorneys' Fees and Costs (ECF No. 28) demonstrated

23  the ample reasonableness of Plaintiff's request for attorneys' fees and costs in the amount of $430,000,

24  based on the lodestar method and Plaintiff's actual out-of-pocket costs.  Moreover, Plaintiff filed the

25  attorneys' fees and costs motion thirty-five (35) days prior to the opt-out and objection deadline so that

26  Settlement Class Members had ample opportunity to review Plaintiff's request for attorneys' fees and

27  costs.  No one objected to Plaintiff's motion.

28

In sum, the Settlement is a tremendous recovery that is in the Settlement Class's best interests. It is unlikely that they would have achieved a better recovery through litigation, especially in light of the risks, time, and expense that would be required. Thus, the adequacy of relief supports final approval.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement does not provide preferential treatment to any subset of the Settlement Class. All Settlement Class Members are entitled to the full value of the late fees they paid or were charged, save for the $31.98 per late fee that reflects, according to plaintiffs' experts, Equity's actual average cost per late fee based on the extensive record developed in *Munguia-Brown*. Plaintiff Van Cott's restitution award under the Settlement is being determined using the same methodology as that for all other Class Members – *i.e.,* the $143.25 late fee she paid will be returned to her minus $31.98 for Equity's actual average cost per late fee. Nor does Plaintiff Van Cott's proposed service award make the Settlement inequitable. In the Ninth Circuit, service awards are routinely awarded and do not render class action settlements unfair or unreasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003). Moreover, $5,000 service awards are considered "presumptively reasonable" in the Northern District of California. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). Finally, Plaintiff Van Cott's service award is to be paid separately by Defendants and will not come from the Class fund.

### 5. Class Counsel's Experience and Views Support Approval.

Courts must also consider the experience and views of counsel regarding the settlement. *See Churchill Vill., L.L.C.,* 361 F.3d at 576-77. "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citation omitted). Class Counsel have extensive experience litigating class actions and uniquely invaluable experience litigating the same claims against the same defendant on behalf of a parallel class in the related *Munguia-Brown* case for the past eleven years. They brought this particular expertise to bear in being able to weigh the strengths and weaknesses of Plaintiff's claims, Defendants' defenses, and the value of this Settlement. Based on that unmatched experience, Class Counsel believe that the Settlement is fair,

1  reasonable, and adequate – and would not have accepted the Rule 68 Offer had they thought they could

2  achieve a better outcome through litigation.  *See* Dardarian Prelim. Decl. ¶¶ 2-16, 22-25, 62-65.

3  **6.   Class Notice Has Been Issued.**

4  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*,

5  150 F.3d at 1025.  Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a

6  reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

7  23(e)(1).  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

8  including individual notice to all members who can be identified through reasonable effort."  The

9  notice must "clearly and concisely state in plain, easily understood language" the nature of the action,

10  the class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ. P.

11  23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class members, it

12  does not require that each class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449,

13  1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually

14  received" notice).

15  As described above, Simpluris effectuated Notice in accordance with the Settlement and the

16  Court's Preliminary Approval Order directing notice to Class Members individually by email or

17  mailing addresses and posting on the Administrator's and Class Counsel's websites.  Simpluris is

18  conducting additional skip traces to ensure that notice reaches additional Class Members.

19  Accordingly, the Court can find that Class Members received the best notice practicable under the

20  circumstances.

21  **7.   The Reaction of Settlement Class Members to the Proposed Consent Decree**

22  In determining the fairness of a settlement, the Court should consider class member objections.

23  The absence of a large number of objections to a proposed settlement raises a strong presumption that

24  the terms of the agreement are fair.  *See, e.g., Churchill Vill., L.L.C.,* 361 F.3d at 577 (approving a

25  settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected

26  to the settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018); *Nat'l*

27  *Rural Telecomms. Coop.,* 221 F.R.D. at 529.  For those Settlement Class Members who were sent the

28  initial round of notice the deadline to submit objections to this Settlement was October 27, 2025, but

942033.13

1  the Parties received no objections to the proposed Settlement, including after that objection deadline.

2  *See* Dardarian Final Decl. ¶ 6; *see also* Brunner Decl. ¶¶ 17-18.  Plaintiff's Counsel will update the

3  Court as to the result of the second round of notice.  The reaction of Settlement Class Members

4  supports final approval of the proposed Settlement.

5  **B.**    **The Proposed Service Award Should Be Approved.**

6      As discussed in Plaintiff's Motion for Class Representative Service Award, ECF No. 29,

7  Plaintiff requests that this Court approve a $5,000 service award to Class Representative Courtney Van

8  Cott for her important and substantial contributions to the Settlement Class with respect to the

9  investigation, negotiation, and settlement of this matter.  As of the date of this filing, no one has

10  objected to the proposed service award.  Dardarian Final Decl. ¶ 6.  Accordingly, for the reasons stated

11  in her papers, Plaintiff respectfully requests that the Court grant the requested $5,000 award.

12  **C.**    **Plaintiff's Motion for Reasonable Attorneys' Fees and Costs Should be Approved.**

13      As set forth in Plaintiff's Motion for an Award of Reasonable Attorneys' Fees and Costs, ECF

14  No. 28, Plaintiff seeks $430,000 for her reasonable attorneys' fees and costs under the lodestar method,

15  which is considerably less than Class Counsel's actual lodestar to date.  *See also* Dardarian Final Decl.

16  ¶¶ 7-8.  Class Counsel's compensation will be determined by the Court and will not be paid from the

17  funds to compensate Settlement Class Members.  *See* Rule 68 Offer ¶ 4.  No class member has objected

18  to the proposed award of attorneys' fees and costs since the Class Notice was disseminated.  Dardarian

19  Final Decl. ¶ 6.  Accordingly, for the reasons stated in her papers, Plaintiff respectfully requests that

20  the Court grant the requested amount in full.

## IV.    CONCLUSION

22      For all the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval

23  of the Settlement, including Plaintiff's requested attorneys' fees and costs and Class Representative

24  service award, and enter final judgment in accordance with the [Proposed] Order submitted herewith.

Dated: November 10, 2025          Respectfully submitted,

                                  DARDARIAN HO KAN & LEE


                                  /s/ *Linda M. Dardarian*
                                  Linda M. Dardarian

                                  Attorneys for Plaintiff and the Settlement Class

942033.13